**Leah BLOOMENTHAL et al.,**
**Plaintiffs-Appellants,**

v.

**Michael E. LAVELLE et al.,**
**Defendants-Appellees.**

**No. 80–1136.**

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 8, 1980.

Decided Feb. 11, 1980.

Andrew M. Raucci, Michael P. McClelland, Chicago, Ill., for plaintiffs-appellants.

Barry T. McNamara, William J. Campbell, Jr., Peter Petrakis, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and PELL and TONE, Circuit Judges.

PER CURIAM.

This appeal has been briefed on an emergency basis, due to the time constraints faced by the defendants, the Chicago Board of Election Commissioners and its members, in arranging for ballots to be printed for the primary election to be held on March 18, 1980. Under Rule 34 of the Federal Rules of Appellate Procedure, we have decided this appeal without oral argument. Due to the emergency nature of the appeal, we have dispensed with the notice generally provided under Circuit Rule 14(f).

## I.

The plaintiffs are candidates in the primary election to be held March 18, 1980. Their complaint relates to the manner of placement of candidates on the ballot for that election. The layout of the ballot on the voting machines is such that the offices are listed in horizontal fashion across the top of the ballot, with the names of the candidates listed in vertical columns under the appropriate offices. In some cases, where there is insufficient space to list all candidates in one vertical column, more than one column is used for the same office so that for those offices, some of the names will appear in sequence on a horizontal line and others will appear below on lower horizontal lines.

The plaintiffs sought injunctive relief which would have required the defendants to list all candidates for each of the offices in question on the same line (i. e. horizontally across the face of the ballot), thus widening the space devoted to each office. The district court denied preliminary injunctive relief, finding insufficient likelihood of success on the merits. An injunction pending appeal was also denied.

## II.

 It is settled that on appeal from the denial of a preliminary injunction, the question before us is whether the district court judge abused his discretion. *Kolz v. Board of Education*, 576 F.2d 747 (7th Cir. 1978).[1] The standards applicable here are the usual standards for determining whether a preliminary injunction should issue, including whether the plaintiffs have shown a probability of ultimate success on the merits. Because we determine that they have not, we conclude that the district court judge did not abuse his discretion in denying a preliminary injunction.

## III.

To expedite this matter in the district court, the parties entered into a stipulation of facts for the purposes of the motion for preliminary injunction. We will summarize the crucial portions of that stipulation, to show the posture of this case when the district court ruled. The parties stipulated that the order of ballot placement is determined by the order in which petitions are filed, with ties being broken by means of impartial lotteries. The defendants determined the number of vertical columns needed to accommodate the candidates for each office. For example, in one Congressional District there are 43 Democratic Candidates for Delegate to the National Convention. Since there are only four horizontal rows available on the Democratic primary ballot, 11 vertical columns were needed to list all candidates. Where multiple vertical columns are involved in the same race, candidates were listed in horizontal rows. Thus, in the above example, the first 11 candidates were listed on the first horizontal line, the second 11 were listed on the second horizontal line, and so on. Where there are four or less candidates running for an office (and therefore only one vertical column is required), the candidates are listed vertically with the first candidate on the top line. Only 60 vertical columns are available on the voting machines.

---

1. Of course, by the time this case is heard on its merits in the district court, the primary election will be past history. We note that this fact will not necessarily moot the case, since as to plaintiffs who may be candidates in the future, the issue involved is capable of repetition but evades review. *Board of Election Commissioners v. Libertarian Party*, 591 F.2d 22, 24 (7th Cir.), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979); *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970).

The parties stipulated that when candidates are arranged vertically, the one listed on top has a certain advantage, and that when they are arranged horizontally, the one at the far left has a certain advantage. Cf. *Weisberg v. Powell*, 417 F.2d 388, 392–93 (7th Cir. 1969). In the absence of other changes, if all candidates for every office were listed horizontally, some contested offices would have to be taken off of the machine and tallied by another means. If only the named plaintiffs and their opponents were to be arranged horizontally, this could be accomplished without removing contested offices from the machine so long as the candidates for other offices continued to be arranged in vertical columns.[2] It was stipulated that removing contested elections from the machine and tallying them by other means would result in substantial monetary costs, and would probably result in voter confusion and less accurate results. Removing only uncontested elections from the machine would result in no significant additional monetary costs. At present, the defendants plan to put 13 uncontested judicial elections on paper ballots for the primary. In order to minimize the use of paper ballots and maximize use of the machines, the placement of candidates in vertical columns is required by the space limitations of the machine.

The specific form of relief sought by the plaintiffs is as follows. They would have required the defendants to remove the remaining uncontested races from the machine ballot, which would make available a certain number of vertical columns. The extra columns could then be used to accommodate the plaintiffs and their opponents, so that all candidates in the four races in question would be listed horizontally on the first line. In other words, while candidates in other races would continue to be arranged in vertical columns beneath the listing of the offices, the candidates in the plaintiffs' four races would be listed horizontally under the designated offices, all on the same horizontal line.

## IV.

In prior ballot placement cases, we have considered special procedures which were set up for early filing of petitions without general public dissemination, *Weisberg v. Powell, supra*, and the widespread and persistent practice by County Clerks of excluding opposition party members from the top ballot position, *Sangmeister v. Woodard*, 565 F.2d 460 (7th Cir.), *appeal dismissed*, 435 U.S. 939, 98 S.Ct. 1516, 55 L.Ed.2d 535 (1977). In the *Weisberg* case there were two unequal aspects to the system, which gave rise to an equal protection violation. First, special arrangements were made for Sunday mail delivery, with the Sunday petitions considered to be filed first. The public at large was not advised of these facts, so that only those who knew of the special arrangements could take advantage of them. Second, the Secretary of State selected the order of placement of petitions filed at the same time, doing so according to his own personal preferences. The *Sangmeister* case involved the question of which of the major parties should be listed first on the ballot. There was found to be a widespread and persistent practice by the County Clerks to always list the Clerk's own party first. This constituted an intentional deprivation of equal protection.

The present case simply does not present a similar situation. It is difficult to imagine how the plaintiffs could demonstrate an equal protection violation, since to do so they must demonstrate intentional or purposeful discrimination by the election authorities to favor one class over another. *Baum v. Lunding*, 535 F.2d 1016 (7th Cir. 1976). It may be true that the defendants are responsible for the consequences of their actions, as the plaintiffs have argued. It is equally true that the disadvantage inherent in the ballot positions of the plaintiffs results from the fact, demonstrated by social scientists and now recognized by the courts, that the "first" ballot position has a built-in advantage. Given this fact, the

**2.** Although not explicitly stated in the stipulation, it is apparent that this latter result could be achieved only by removing *uncontested* races from the machine.

**1142**

defendants have been ordered by Courts in this Circuit to devise neutral ways to allocate positions on the ballot. So far as the stipulation in this case indicates, they have done so. It is difficult to find the "discrimination" or to define the "class" discriminated against.

Similarly, it will be difficult for the plaintiffs to establish a due process violation. We recognize that both candidates' and voters' rights are implicated, and that the voters' rights are fundamental. But not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review. *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir.), *cert. denied*, —— U.S. ——, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). Our cases have indeed recognized that first position on a ballot represents an advantage. *Weisberg, supra,* 417 F.2d at 392–93; *Sangmeister, supra,* 565 F.2d at 465. Thus, the plaintiffs argue that we should apply a strict scrutiny standard of review. We refuse to do so on this record, for the following reasons. As to plaintiffs Carroll and Brown, the relief requested would simply substitute a horizontal disadvantage for a vertical disadvantage, since one candidate for each race would continue to be listed first. No evidence was presented to prove that one disadvantage is more severe than the other, and the stipulation does not address the relative severity of disadvantage. As to these two plaintiffs nothing in the record supports a conclusion that *any* burden on the rights of the voters has been imposed other than that which is a natural consequence of the fact that only one candidate can be listed first.

Plaintiffs Lorenz and Bloomenthal arguably present a stronger case, in that their positions on the ballot are both lower than some opponents and to the right of others. Thus, these plaintiffs argue that they suffer from a "double disadvantage." The record is insufficient to support the conclusion that a double disadvantage has any greater impact than either of the single disadvantages. Even if greater impact had been shown, which it was not, it would appear that the primary burden of the alleged harm seems to be the unavoidable result of the fact that only one candidate can be listed first, regardless of what system is used. *Cf. Board of Election Commissioners v. Libertarian Party*, 591 F.2d 22, 29 (7th Cir.) (Swygert, J., dissenting), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979). Under the circumstances, the rational relationship test would appear to be appropriate. And it appears that it would be a rational choice for the defendants to choose to maximize the use of the machine ballots, rather than to adopt the proposal of the plaintiffs at the expense of requiring greater use of paper ballots. *Cf. Board of Election Commissioners v. Libertarian Party, supra,* 591 F.2d at 26–27.

Under the circumstances, we have no greater confidence than did the district court that the plaintiffs will likely succeed on the merits of this case. As a result, the district court judge did not abuse his discretion in denying a preliminary injunction. The Clerk of this Court is directed to enter judgment AFFIRMING the order of the district court.