**Joe WOODS, A–90426, Plaintiff,**

v.

**Willa Jean ALDWORTH, Mail Room Supervisor, SCC, Melvin Allen, Chairman of Inquiry Board, SSC, Richard W. DeRobertis, Warden SCC, Defendants.**

**No. 82 C 3050.**

United States District Court,
N.D. Illinois, E.D.

April 4, 1983.

Joe Woods, pro se.

C. Thomas Hendrix, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Joe Woods ("Woods") brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 seeking monetary, declaratory and injunctive relief for the alleged violation of his constitutional rights under the First, Fifth and Fourteenth Amendments. Before the Court is the motion to dismiss or, in the alternative, for summary judgment of defendants Richard W. DeRobertis ("DeRobertis"), Warden of the Stateville Correctional Center ("Stateville"); Melvin Allen ("Allen"), Chairman of the Institutional Inquiry Board at Stateville; and Willa Jean Aldworth ("Aldworth"), Chief Supervisor of the Stateville Mail Room. For the reasons that follow, the motion is granted in part and denied in part.

According to the allegations of the amended complaint, Woods never received eight pieces of legal mail that were delivered to the Stateville mail room between February 2, and May 11, 1982.[1] Woods alleges that he wrote to Aldworth on several occasions to complain of his failure to receive all of the mail that had come to the institution for delivery to him. Aldworth responded stating that the mail office had forwarded all legal mail to Woods. She noted, however, that contrary to standard procedure, the mail office had not received signed receipts to reflect delivery. All legal mail is "tagged" when it leaves the mail office. The officer delivering the mail has the inmate sign the tag when he hands him

a piece of legal correspondence and returns the tag back to the mail office. Because the mail office had not received tags back for the legal letters addressed to Woods, Aldworth assumed that cellhouse personnel were causing the problem. She directed Woods to the superintendent of his cellhouse.

On February 11, 1982, Woods filed a grievance with Allen as Chairperson of the Institutional Inquiry Board ("Board"). The grievance complained about the lost mail and requested a search to locate it. Two months later, Allen, using a preprinted form, informed Woods that the Board would not conduct a hearing on the grievance because "the issue you address is no longer active. In the course of investigation I find your complaint/question has been resolved."

On March 16, 1982, Woods wrote DeRobertis about the difficulties he was experiencing with the delivery of his legal mail. DeRobertis apparently did not respond.

The allegations of the amended complaint implicate Woods' constitutional right to correspond. In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court recognized that prisoners, through their non-prisoner correspondents, have a right under the First and Fourteenth Amendments to receive communication free from arbitrary or unjustified governmental interference. *Id.* at 409, 94 S.Ct. at 1809. Thus, Woods' allegations that Aldworth deliberately lost or refused to deliver certain items of his legal mail clearly state a colorable claim for relief under 42 U.S.C. § 1983. *See Owen v. Lash,* 682 F.2d 648, 652–53 (7th Cir.1982); *Bolding v. Holshouser,* 575 F.2d 461, 464–65 (4th Cir.), *cert. denied,* 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978). Moreover, since the correspondence at issue in this case was allegedly legal in nature, Woods also has an actionable claim for violation of his right of access to the courts. *See Crowder v. Lash,* 687 F.2d 996, 1004 (7th Cir.1982).

1. In subsequent pleadings, Woods identifies ten more items of legal mail that were received in the mail room between June 11, 1982, and

January 28, 1983, but never delivered to his cell.

## Motion To Dismiss Mail-Related Claims

Defendants present two arguments in support of their motion to dismiss Woods' claim concerning the alleged loss or mishandling of his mail. They first contend that the allegations of the amended complaint, when read in light of the exhibits attached to it, evidence negligence rather than any intentional or deliberate failure on the part of prison officials to deliver mail to Woods. Citing, *inter alia,* this Court's opinion in *Hamrick v. Lewis,* 515 F.Supp. 983 (N.D.Ill.1981), defendants assert that plaintiff must show more than mere negligence in order to state a claim of constitutional magnitude.

Defendants' state-of-mind argument fails in two respects. First, *Hamrick* and the other cases relied upon by defendants predate *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In *Parratt,* the Supreme Court apparently rejected the notion that a claim based on merely negligent conduct could never be brought under § 1983. *Id.* at 534–35, 101 S.Ct. at 1912. Second, and more important here, Woods specifically alleges that Aldworth and the other defendants "deliberately" failed to deliver legal documents to him. Amended Complaint, ¶¶ 18 and 28. For purposes of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept this allegation as true. *Estelle v. Gamble,* 429 U.S. 97, 99, 97 S.Ct. 285, 288, 50 L.Ed.2d 251 (1976).

Defendants' second argument in support of their motion to dismiss Woods' mail-related claims is likewise based on a misreading of the complaint. Defendants contend that Woods does not state a claim for denial of access to the courts because he fails to allege any prejudice to his legal activities as a result of his alleged failure to receive certain pieces of legal correspondence. Contrary to defendants' contention, Woods alleges that they infringed his right to pursue his criminal appeal by withholding relevant legal documents. Amended Complaint, ¶ 26. Elaborating in his response to defendants' motion, Woods explains that one of the missing letters contained a brief from the state opposing his petition for a writ of certiorari before the United States Supreme Court. He asserts that his failure to receive the brief prohibited him from responding and that the Supreme Court dismissed his petition as a result. Thus, assuming *arguendo* that prejudice is a necessary element of Woods' claim of denial of access to the courts, the allegations of the amended complaint are sufficient to withstand a motion to dismiss.

■ Allen raises a separate ground for dismissal of the amended complaint as against him. Woods does not claim that Allen personally interfered with his mail. Rather, he asserts that Allen denied him his statutory right to a grievance procedure by failing to investigate his complaint about the problems with the delivery of his mail. Allen maintains that this is insufficient to state a claim for relief because Woods has no constitutional right to a grievance procedure.

In *Azeez v. DeRobertis,* 81 C 7163 (N.D. Ill. Nov. 2, 1982), Judge John Nordberg held that Illinois prisoners had no constitutionally enforceable right to a hearing on grievances presented to prison officials in accordance with the statutorily mandated prison grievance procedure. But this Court need not address that issue here. The preprinted form that Allen used to respond to Woods' grievance invites the grievant to resubmit his grievance if the condition for denial of the grievance reverses. Amended Complaint, Exhibit D. Although Woods apparently disputed Allen's finding that his complaint about mail delivery had been independently resolved, he does not allege that he made any attempt to reopen his grievance. Because Woods at all times maintained the right to resubmit his complaint, he cannot complain that Allen deprived him of a right to a hearing on his grievance.

Accordingly, the motion to dismiss is granted as to Allen and denied in all other respects. The Court now turns to the motion for summary judgment.

*Motion For Summary Judgment*

The summary judgment motion is supported by affidavits of Aldworth and James Dixon ("Dixon"), Administrative Assistant to DeRobertis. In her affidavit, Aldworth states that she investigated all complaints submitted by Woods. Her investigations verified that the mail office received all of the purportedly lost mail addressed to Woods and sent it to the cellhouse for delivery to him. She denies any intentional or deliberate failure to deliver Woods' mail to him.

Dixon states that on August 7, 1982, DeRobertis ordered him to investigate Woods' complaints concerning the delivery of his mail. He further states he investigated the matter thoroughly and did not uncover any wrongful interference with Woods' mail by either mail office personnel or other officers and employees of Stateville.

In response, Woods submits an affidavit of Sam Ingram ("Ingram"), a correctional counselor at Stateville. Ingram states that, at Woods' request, he conducted an independent search for Woods' mail. According to Ingram, the results of his search show that Woods' mail never reached the cellhouse from the mail office.

■ About the only undisputed fact is that Woods' mail reached the mail office at Stateville. Beyond that, much is uncertain. While Dixon's investigation failed to uncover any wrongdoing, it also failed to explain why the standard procedures for delivery of legal mail were not followed. Aldworth admits that the established practices for handling legal mail were violated, but points the finger of blame elsewhere. She states that the mail left the mail office. Woods, on the other hand, presents an affidavit that states the mail never reached the cellhouse. Whether Woods can ever prove his claim against Aldworth and solve the mystery of his missing mail remains to be seen. The Court, however, finds that he has raised sufficient questions of material fact to preclude granting summary judgment in favor of Aldworth at this time.

■ The Court reaches a different conclusion with respect to Woods' claim against DeRobertis. The amended complaint does not allege that DeRobertis was personally involved in the handling of Woods' mail. Rather, it alleges that he is "responsible for the work or job related actions of all persons or employees of the institution" and that he failed to investigate Woods' complaints raised in a letter addressed to him.

Clearly, DeRobertis cannot be held liable for the actions of the employees at Stateville. *See Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir.1981). Moreover, Woods presents no evidence to rebut Dixon's statement that DeRobertis ordered an investigation into Woods' complaint about his mail. Thus, the Court need not address the question of whether DeRobertis could be held to acquiesce in, and thereby become potentially liable for, a constitutional violation about which he was informed only by letter. *See generally Crowder, supra,* 687 F.2d at 1005–06. Accordingly, the Court grants summary judgment in favor of DeRobertis.

*Aldworth's Good-Faith Immunity Defense*

The final issue the Court must consider is whether Aldworth is entitled to good faith immunity for her actions. A prison official who is a defendant in a § 1983 suit is entitled to immunity from liability unless she knew or reasonably should have known that the action she took would violate the plaintiff's constitutional rights. *See Crowder, supra,* 687 F.2d at 1007. Aldworth does not contend that the constitutional rights at issue here were not clearly established during the period in question. Instead, relying on *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), she contends that she is entitled to qualified immunity because her actions were, at most, negligent, and that only intentional injury can strip an official of her good faith immunity.

■ Aldworth's reliance on *Procunier* is misplaced. When *Procunier* was decided, the standard for qualified immunity included both a subjective and an objective component. Under the subjective branch of the standard, an official could not claim a good

faith immunity if he acted with malicious intention to deprive the plaintiff of a constitutional right. The discussion of intent in *Procunier* cited by Aldworth relates only to the subjective element of the then-existing standard for qualified immunity. *Id.* at 566, 98 S.Ct. at 862. In *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court eliminated the subjective prong of the qualified immunity defense. Whether Aldworth is entitled to qualified immunity under the standard set forth in *Harlow* cannot be determined from the present record.

In conclusion, the motion to dismiss is granted as to Allen and denied as to DeRobertis and Aldworth. The alternative motion for summary judgment is granted as to DeRobertis and denied as to Aldworth. Aldworth is given twenty days within which to file an answer. Status is reset for April 26 at 10:00 a.m. It is so ordered.