Sanford Norman HARRIS,
Plaintiff-Appellant,

v.

Neal D. McDONALD, Warden, Sheridan Correctional Center, et al.,
Defendants-Appellees.

No. 83–1689.

United States Court of Appeals,
Seventh Circuit.[*]

Submitted March 6, 1984.
Decided June 19, 1984.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Robert M. Hodge, Chicago, Ill., for plaintiff-appellant.

Patricia Rosen, Rosalyn B. Kaplan, Asst. Attys. Gen., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and POSNER and FLAUM, Circuit Judges.

PER CURIAM.

Plaintiff-appellant Harris asks this court to reconsider its holding in *Shango v. Jurich*, 681 F.2d 1091 (7th Cir.1982), in light of the Supreme Court's recent decision in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). We conclude that *Hewitt* in no way undermines the validity of the *Shango* analysis and hold that Harris' intrastate transfer from a medium to a maximum security institution implicated no constitutionally based or state-created liberty interest entitling him to a pre-transfer hearing.

I

On December 9, 1980, at 12:19 p.m., Harris, then a resident at the Sheridan Correctional Center in Sheridan, Illinois, a medium security institution, was served with a

resident disciplinary report, which listed several sections of Administrative Regulation (A.R.) 804 that he was alleged to have violated. Harris appeared before the Adjustment Committee on December 10, 1980, at 10:06 a.m.; a continuance was granted until December 30, 1980. The Committee ultimately found Harris guilty of the charges and recommended that he receive 30 days of segregation, lose 30 days of good time, be demoted to "C" grade, and be transferred to a maximum security institution.

On February 18, 1981, Harris was transferred from Sheridan to the Stateville Correctional Center.[1] On May 13, 1981, Harris was advised in writing by Michael Lane, Director of the Illinois Department of Corrections, that the disciplinary report was to be expunged from his record; the "24 hour provision" of A.R. 804 had been violated when Harris was summoned before the Adjustment Committee 21 hours and 47 minutes after the disciplinary report had been served upon him. Although Harris' good time and previous grade were restored to him and he received "state pay" for the time spent in segregation, remedial action did not include Harris' return to Sheridan.

Although Harris presented a number of distinct claims to the district court, on appeal he challenges only the district court's conclusion that defendants were not required by the Due Process Clause of the Fourteenth Amendment to afford him a pre-transfer hearing.

## II

■ It is now well-established that there is no constitutionally based liberty interest in remaining in a particular institution within the state system. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

[T]he Due Process Clause [does not] in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State's institutions is within the normal limits of range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.

*Id.* at 225, 96 S.Ct. at 2538. Consequently, the Constitution does not mandate certain procedural formalities, such as a hearing, prior to transfer.[2]

■ It is equally well-established, however, that state statutes, practices, or duly promulgated prison regulations may create liberty interests deserving of the procedural protections of the Due Process Clause. *See Vitek v. Jones*, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980); *Shango v. Jurich*, 681 F.2d 1091. If state statutes or prison regulations condition transfer on the occurrence of specific events, such as misconduct, a liberty interest is created. *Meachum v. Fano*, 427 U.S. at 228, 96 S.Ct. at 2540.

In his brief, Harris manifests awareness of this court's decisions in *Shango v. Jurich*, 681 F.2d 1091, and *Chavis v. Rowe*, 643 F.2d 1281 (7th Cir.1981). In *Chavis*, we held that A.R. 819, the transfer regulation at issue in this case, creates no justifiable expectation that a resident will not be

---

1. It was disputed in the district court whether Harris had a hearing of some sort prior to the transfer. Harris averred in an affidavit that he had not been offered an opportunity to appear before the "Adjustment Committee" with regard to the transfer. Defendants submitted an affidavit by William Hardy, a correctional counselor at Sheridan, in which he stated that on or about January 26, 1981, Harris appeared before the Institutional Assignment Committee, which was contemplating the recommended transfer. In considering Harris' due process claim, the

district court assumed, arguendo, that Harris had not been afforded the pre-transfer hearing prescribed by A.R. 819.

2. This is true even in the case of a disciplinary transfer. *See Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). A contrary suggestion in *Chavis v. Rowe*, 643 F.2d 1281, 1290 (7th Cir.1981), was disavowed by this court in *Shango v. Jurich*, 681 F.2d 1091, 1098–99 n. 14 (7th Cir.1982).

transferred absent the occurrence of specified events. In *Shango*, we reiterated that the regulation places no limitations on prison officials' unfettered discretion to transfer a resident "for whatever reason or for no reason at all." *Shango v. Jurich*, 681 F.2d at 1100.

Harris, in an effort to avoid application of the principle of stare decisis in this case, contends that the Supreme Court's recent decision in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), undermines the reasoning upon which the *Shango* result was based. We disagree. Upon examination of the regulations at issue in *Hewitt*, which governed transfer from the general prison population to administrative segregation, the Supreme Court found that they contained

> language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed, ... and that administrative segregation will not occur absent specified substantive predicates—viz., "the need for control," or "the threat of a serious disturbance."

*Hewitt v. Helms*, 103 S.Ct. at 871. This combination of explicitly mandatory language and specific substantive predicates led the Court to find a protected liberty interest.

▮ Harris conveniently chooses to ignore the "specific substantive predicates" factor in his comparison of the regulation at issue in *Hewitt* and A.R. 819. It is true that A.R. 819 provides that "[a] hearing will be scheduled"; that "[t]he reasons for the transfer shall be reviewed with the resident"; and that the resident "[w]ill be allowed to present information and/or evidence which would tend to support or refute the transfer." Standing alone, however, this explicitly mandatory language is insufficient to create a liberty interest; and, as we determined in *Chavis* and *Shango*, A.R. 819 does not promise that transfer

will not occur absent specific substantive predicates.

▮ Undaunted, Harris seeks to resurrect an argument laid to rest in *Shango* and buried six feet under in *Hewitt*. He would have this court hold that in the case of an involuntary transfer from a lower to a higher security institution, a substantive liberty interest may be inferred solely from the mandatory procedural protections of A.R. 819. In *Shango*, we labeled as "analytically indefensible" the argument that the procedures established by the regulation can themselves be considered a liberty interest. *Shango v. Jurich*, 681 F.2d at 1100. "[A] state created procedural right is not itself a liberty interest within the meaning of the Fourteenth Amendment." *Id.* at 1101. The *Hewitt* Court also rejected the notion that the mere creation of "a careful procedural structure to regulate the use of administrative segregation indicates the existence of a protected liberty interest." *Hewitt v. Helms*, 103 S.Ct. at 871.[3] Harris has not convinced us that in promulgating A.R. 819, the Illinois Department of Corrections did more than establish "simple procedural guidelines." *Id.*

Finally, Harris seizes upon the district court's observation that this court has not consistently applied the teachings of *Shango* and its concomitant citation of *Walker v. Prisoner Review Board*, 694 F.2d 499 (7th Cir.1982). Harris argues that the Illinois Department of Corrections is bound to follow a regulation duly promulgated by it and designed to fulfill its due process obligations to him.

▮ Contrary to Harris' veiled suggestion, *Walker* is not inconsistent with *Shango*. In *Walker*, plaintiff inmate challenged the Parole Board's denial of access to his parole file. Rule IV–C of the Board's Rules Governing Parole expressly provided that "[a] parole candidate shall have access to all documents which the Board considers in denying parole or setting a release

---

3. *See also Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983), in which the Supreme Court cited *Shango* in reaffirming the validity of the principle that "[a]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* n. 12.

date." Noting that the language of the rule was "clear, mandatory, and without qualification," this court held that the rule "create[d] for parole candidates a justified expectation of access, and that it specifie[d] precisely an element of due process." *Walker v. Prisoner Review Board,* 694 F.2d at 503. Of critical import to the *Walker* decision was the fact that compliance with the administrative regulation at issue was constitutionally mandated:

> [T]he requirements of Rule IV–C recognize and implement the Board's constitutional obligation to accord parole candidates due process in connection with denials of parole.

Unlike the regulation at issue in the present case, Illinois law and regulations governing parole had been held to create "an expectancy of release on parole which is entitled to due process protection." *Id.* at 501. *See also United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185 (7th Cir.), *cert. denied sub nom. McCombs v. Scott,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). As we previously made clear, A.R. 819 creates no justifiable expectation that a resident will remain in a particular institution.

As a last resort, Harris suggests that this court adopt the mode of analysis undertaken by the *Hewitt* dissenters. It bears repeating that in accordance with well-established judicial principles, lower courts are bound to follow, whether personally persuaded by, the decisions of higher courts. Our duty is to decide cases based upon applicable Supreme Court precedent, not to engage in a legal critique of that precedent. The duty of the district courts is equally clear. AFFIRMED.