Walter L. McCALVIN, Plaintiff,

v.

James W. FAIRMAN, Defendant.

No. 81–2240.

United States District Court,
C.D. Illinois,
Danville Division.

Feb. 25, 1985.

Walter L. McCalvin, Jr., pro se.

William G. Sullivan, Asst. Atty. Gen., Chicago, Ill., for defendant.

## ORDER

BAKER, Chief Judge.

The plaintiff, Walter L. McCalvin, Jr., currently a resident of the Menard Correctional Center, brought this action under 42 U.S.C. § 1983 for the alleged deprivation of his constitutional rights. On August 29, 1984, the defendant moved this court for summary judgment. On September 27, 1984, the plaintiff responded to the defendant's motion for summary judgment, stating in an affidavit that there remained in the case genuine issues of material fact. On October 16, 1984, the defendant replied to the plaintiff's response to the defendant's motion for summary judgment; on October 19, 1984, the plaintiff, by affidavit, responded to the defendant's reply of October 16, 1984.

The plaintiff has alleged he was denied transfer to the Medium Security Unit

(MSU) at the Pontiac Correctional Center from his then residence in Pontiac's maximum security facility, in violation of his Fourteenth Amendment right to equal protection and due process. The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to both the plaintiff's claims of denial of due process and denial of equal protection of the law.

## I.

McCalvin, a resident of the maximum security facility at the Pontiac Correctional Center at the time in question, sought transfer to the MSU pursuant to Administrative Directive (A.D.) 6.51k of the Illinois Department of Corrections, which provides the procedure and criteria for the transferring of residents to the MSU. (See Appendix.) Under the directive, if an inmate is eligible for placement in the MSU he may apply for such placement to the Institutional Assignment Committee. If the Assignment Committee approves the inmate's request, the application must be reviewed and approved by either the Warden of Pontiac Correctional Center for inmates or the Transfer Coordinator for inmates residing in institutions other than Pontiac.

On June 3, 1980, McCalvin was considered for placement in the MSU at Pontiac by the Assignment Committee, pursuant to McCalvin's request for transfer.[1] His transfer was denied by the Assignment Committee because of the length of his maximum sentence and because of his "escape history"; Warden Fairman concurred in the disapproval of his request for transfer. On December 9, 1980, McCalvin was

again considered for transfer to the MSU by the Assignment Committee, and his request was denied because of the length of his maximum sentence; Warden Fairman concurred in the denial. On April 6, 1981, McCalvin's renewed application for transfer to the MSU was again considered by the Assignment Committee, and was again rejected because of the length of McCalvin's maximum sentence; Warden Fairman again concurred in the disapproval on April 21, 1981.

McCalvin has alleged that he was denied transfer to the MSU at Pontiac in violation of his Fourteenth Amendment rights to equal protection and due process because other prisoners with longer sentences than his have been transferred to the SMU, and that his requests for transfer were arbitrarily and capriciously decided. McCalvin further alleges that the defendant denied his transfer request in retaliation for his legal activities; and that while the plaintiff has met all the requirements for transfer to the MSU, his requests have been consistently denied for erroneous reasons.[2]

## II.

The Fourteenth Amendment prohibits a state from depriving a person of life, liberty, or property without due process of law. In order to determine if a state has violated a person's due process liberty right, two inquiries must be made: a liberty interest within the meaning of the clause must be identified, and the degree of process due a person before their liberty interest may be deprived must be ascertained. See *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir.1982).

---

1. It appears that McCalvin had applied at least once before this for transfer to the MSU at Pontiac. McCalvin's counselor denied his request for transfer to the MSU on March 26, 1979, because McCalvin was not in "A" grade status; acting upon a grievance filed by McCalvin the Pontiac Inquiry Board found that McCalvin was, in fact, in "A" grade status, but nevertheless determined that he was *"not* an appropriate candidate" for the MSU, because McCalvin was serving time for escape, armed robbery, burglary, and a 75 to 125 year sentence for murder. *See* Pontiac Inquiry Board Findings and Recommendations, Exhibit B–4, Memorandum of Law in Support of Defendant's Motion for Summary Judgment.

2. The plaintiff McCalvin is not alleging that he has any absolute right to be transferred to the MSU; in his complaint, McCalvin states "Plaintiff does not suggest that he has a right to medium security placement but he does possess a strong right and interest in being fairly considered and avoiding any arbitrary decisions."

When a person has been subject to a constitutionally valid criminal conviction, his right to liberty is sufficiently extinguished so that a state may confine him in any one of its prison facilities. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). *See Harris v. McDonald,* 737 F.2d 662, 664 (7th Cir.1984). The Court in *Meachum* stated that

> [c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisonor is transferred to the institution with the more severe rules.

*Meachum,* 427 U.S. at 225, 96 S.Ct. at 2538. The constitution, therefore, does not mandate any form of procedural formalities that must accompany decisions by a state to place a prisoner in any particular facility, or to transfer a prisoner from one institution to another. *See Harris,* 737 F.2d at 664.

State statutes, practices or duly promulgated prison regulations, however, may create liberty interests which come under the protection of the Due Process Clause of the Fourteenth Amendment. *See Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980); *Shango,* 681 F.2d at 1097; *Harris,* 737 F.2d at 664. If state statutes or prison regulations condition transfer on the occurrence of specific events, a liberty interest is created. *Meachum,* 427 U.S. at 226–27, 96 S.Ct. at 2539–40; *Harris,* 737 F.2d at 664. A regulation providing a procedural right, however, does not create any protectible liberty interest where there is discretion granted to the prison officials implementing the procedure which is not substantially restricted. *See Shango,* 681 F.2d at 1101; *Chavis v. Rowe,* 643 F.2d 1281, 1290 (7th Cir.1981), *cert.*

*denied* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981).[3]

In *Chavis v. Rowe,* the Seventh Circuit held that Administrative Regulation (A.R.) 819 of the Illinois Department of Corrections, the transfer regulation at issue in that case, created no justifiable expectation that a resident will not be transferred absent the occurrence of specified events. *Chavis,* 643 F.2d at 1290. In *Shango,* the Court of Appeals stated again that the transfer regulation A.R. 819 placed no limitations on prison officials' imfettered discretion to transfer a resident "for whatever reason or for no reason at all." *Shango,* 681 F.2d at 1100. In *Harris v. McDonald,* the Seventh Circuit examined the affect of the Supreme Court decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), upon the circuit's interpretation of the transfer regulation A.R. 819. In *Hewitt,* the Court found that a prison regulation governing transfer from the general prison population to administrative segregation could create a protected liberty interest where there was explicit, mandatory language in the regulation requiring that certain procedures be employed and that administrative segregation should not occur absent specified substantive predicates. *Hewitt v. Helms,* 459 U.S. at 471–72, 103 S.Ct. at 871–72. The Seventh Circuit found that, while A.R. 819 does contain language that is "explicitly mandatory," the regulation did not promise that the transfer will not occur absent specific substantive predicates. *Harris,* 737 F.2d at 665.

Administrative Directive (A.D.) 6.51k of the Illinois Department of Corrections establishes the criteria and procedures for the transferring of residents to the MSU at the Pontiac Correctional Center. If an inmate is eligible for MSU placement under the criteria laid out in A.D. 6.51k, he must apply for transfer to the Institutional Assignment Committee. The Assignment Committee may approve or disapprove an

---

**3.** The procedures established by the regulations cannot *in and of themselves* be viewed as a liberty interest for Fourteenth Amendment anal-

ysis purposes. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). *See Shango,* 681 F.2d at 1100; *Harris,* 737 F.2d at 665.

eligible inmate's application; if the committee approves it, the application must be reviewed and approved by either the Warden of Pontiac Correctional Center for inmates residing at Pontiac, or by the Transfer Coordinator for inmates residing in institutions other than Pontiac.

A.D. 6.51k does contain explicit, mandatory language which would compel the employment of the hearing procedures for an eligible resident; the directive, however, does *not* mandate that a transfer will occur where there are specific substantive predicates. There is no restriction on the Assignment Committee's discretion nor on the Warden's or Transfer Coordinator's discretion in approving or disapproving an inmates transfer application. *Hewitt* and *Harris*, therefore, require the finding that A.D. 6.51k does not create a liberty interest protected by the Due Process Clause.[4]

 As the plaintiff McCalvin has no protected liberty interest under the Constitution nor under A.D. 6.51k in being placed in the MSU at Pontiac, the defendant is granted summary judgment as to the plaintiff's procedural due process claim.[5]

### III.

McCalvin alleges that he was denied his transfer requests while other inmates with similar institutional backgrounds were allowed to transfer to the MSU. The plaintiff also avers that the defendant has consistently denied the plaintiff placement in the MSU in retaliation for his legal activities on behalf of other inmates and himself and the defendant thereby violated his right to equal protection of the laws. The defendant claims that the plaintiff has not pled any facts which raise an inference of

retaliation argument, and, therefore, summary judgment should be entered in favor of the defendant and against the plaintiff.

 Equal protection does not require absolute equality or precisely equal advantages. *French v. Heyne*, 547 F.2d 994, 997 (7th Cir.1976) *citing Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). Equal protection does require, however, that the state not purposely discriminate against those who are entitled to be treated in the same manner as other similarly situated persons. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944); *Shango*, 681 F.2d at 1104. In order to prove such a violation of equal protection, a plaintiff must show an intentional or purposeful discrimination in the administration of the state classification. *See Snowden*, 321 U.S. at 8, 64 S.Ct. at 401; *Bloomenthal v. Lavelle*, 614 F.2d 1139, 1141 (7th Cir.1980).

 A mere inconsistency in prison management does not in itself constitute a cognizable equal protection claim. *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir.1978), *cert. denied* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979); *Stringer v. Rowe*, 616 F.2d 993, 998 (7th Cir.1980). The plaintiff McCalvin, however, has alleged that the disparate treatment between himself and those who were granted transfers to the MSU at Pontiac was a result of his activities as a jailhouse lawyer. It is impermissible to deny a transfer request in retaliation for a prisoner's exercise of a protected right even if the denial, when done for another reason, would have been proper. *See Shango*, 681 F.2d at 1103; *Buise v. Hudkins*, 584 F.2d 223, 229 (7th

---

**4.** While the *Hewitt* and *Harris* cases concern situations where a prisoner was being transferred over his objection, the case at bar deals with a prisoner requesting a transfer and the request being denied. There can be no logical distinction between the two situations, however; if the Illinois Department of Corrections has unfettered discretion in transferring a prisoner from one institution to another, it must also have unfettered discretion in deciding to keep an inmate in a particular institution. As the Seventh Circuit noted in *Shango*, a prisoner has no

constitutionally cognizable entitlement to be located in a particular cell within a prison or at a certain location in the state, for his liberty in that regard was extinguished by his lawful conviction. *See Shango*, 681 F.2d at 1098.

**5.** As the court finds there is no protected liberty interest, there is no need to examine the procedures employed by the Illinois Department of Corrections in the hearings given to the plaintiff under A.D. 6.51k.

347

Cir.1978), *cert. denied* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979).

■ This court has already found that McCalvin did not have a due process interest in transferring to the MSU at Pontiac. The plaintiff, however, while he may not have a due process interest in the transfer, does have a constitutional interest or expectation in not being punished for the exercise of activity protected under the constitution. *See Buise,* 584 F.2d at 230. *See also Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 283–84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977) ("Even though he [the school teacher] could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him, ... he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms.")

■ The question whether a denial of transfer based on plaintiff's legal activities is actionable depends upon whether such jailhouse lawyering is a constitutionally protected activity. McCalvin has alleged that the denial of his transfer was based on his legal activities on behalf of himself and others. While jailhouse activities on behalf of others may be a protected activity, depending upon the circumstances in each case, *see Buise,* 584 F.2d at 230–31 and authorities cited, it is well-established that McCalvin's right to participate in legal activities for himself is a protected activity. *See Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718 (1969); *Crowder v. Lash,* 687 F.2d 996, 1004 (7th Cir.1982); *Bonner v. Coughlin,* 517 F.2d 1311, 1320 (7th Cir.1975), *cert. denied* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978); *Adams v. Carlson,* 488 F.2d 619, 632–34 (7th Cir.1973); *Sigafus v. Brown,* 416 F.2d 105, 107 (7th Cir.1969).

In order to create a question of fact, an adverse party responding to a summary judgment motion must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Posey v. Sky-line Corp.,* 702 F.2d 102, 105 (7th Cir.1983) *cert. denied,* — U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). The "mere possibility" that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment. *Posey,* 702 F.2d at 106.

McCalvin has submitted to the court two affidavits filed September 27, 1984, and October 19, 1984, respectively, in which the plaintiff alleges that there is a genuine issue of material fact as to whether the defendant allowed the denial of plaintiff's transfer requests in retaliation for the plaintiff's legal activities.

In *Labatt v. Twomey,* 513 F.2d 641 (7th Cir.1975), prisoner Black made an allegation in his affidavit that he and his fellow plaintiffs were discriminatorily excluded from the early selective release from the deadlock because the plaintiffs had exercised their First Amendment right to criticize the defendant Warden and his prison administration. The Court of Appeals held that the affidavits before the district court had raised questions of fact as to whether such prisoner and his fellow plaintiff prisoners were arbitrarily excluded from the selective process of releases because of exercise of their First Amendment right to criticize the prison's administration, and therefore summary judgment was precluded. *Id.* at 649.

In *Woods v. Aldworth,* 561 F.Supp. 891 (N.D.Ill.1983), the district court held that affidavits submitted by the prisoner plaintiff stating that his mail never reached his cell and affidavit by chief of the mail room stating that the mail left the mail office and that established procedures for handling mail were not complied with, raised a genuine issue of material fact as to the plaintiff's claim of violation of his civil rights for non-delivery of his mail, and, therefore, precluded the granting of summary judgment. *Id.* at 894.

■ In the case at bar, the court finds that the plaintiff in his affidavit has sufficiently raised a genuine issue of material

fact as to his claim for denial of equal protection. The defendant's motion for summary judgment as to the plaintiff's claim of violation of his right to equal protection is denied.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment as to the plaintiff's due process claim is granted.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment as to the plaintiff's equal protection claim is denied.

Defendant's motion for summary judgment is granted in part and denied in part. IT IS SO ORDERED.

## APPENDIX

Administrative Directive 6.51k (effective November 26, 1979) of the Illinois Department of Corrections, Adult Division: Transfer to the Pontiac Correctional Center Medium Security Unit.
POLICY:

1. Residents who are in medium security, minimum security with supervision, or minimum security classification are eligible for transfer to this facility. Further, any resident with a history of escape from any correctional facility within the past five years shall not be placed at the Medium Security Unit.

2. A resident must be in "A" grade status.

3. A resident serving an indeterminate sentence shall have no mcertore than five years remaining until his date of parole eligibility, mandatory supervised release, or statutory parole. A resident serving a determinate sentence shall have no more than five years remaining until his projected release date.

4. Preference shall be given to residents from the Northern section of the state.

5. ·A resident with a history of active gang membership, or gang leadership, those who have been personally involved in any serious institutional disturbance, and those who have a previous history of possession of dangerous contraband, such as weapons, drugs, or alcoholic beverages, shall normally be excluded from transfer. Exceptions can be made to the criteria on an individual basis when a considerable period of time has elapsed since the resident exhibited such behavior and the resident's subsequent institutional adjustment has indicated the unlikelihood of the reoccurrences of any such behavior.

6. A resident with a history of pressuring other residents and residents who have generalized protective custody needs shall not be placed at this facility.

7. Residents with severe disabling medical problems or who require extensive or prolonged medical treatment shall not be considered for placement at this facility.
PROCEDURE:

Residents recently admitted to a Reception and Classification Unit who meet all of the above criteria, shall have a Program Considerations Report prepared by a Reception and Classification Unit counselor. This report, along with at least four copies of the transfer order, shall be referred to the Transfer Coordinator for final review and approval.

Residents who are already assigned to the Pontiac Correctional Center and desire to be transferred to the Medium Security Unit at the Pontiac Correctional Center and meet the above criteria, shall submit an application for transfer to the Institutional Assignment Committee. If the Committee recommends in favor of the transfer, this application will be reviewed and approved by the Warden at the Pontiac Correctional Center and need not be approved by the Transfer Coordinator. Residents presently confined to some facility other than the Pontiac Correctional Center and desire a transfer to the Medium Security Unit at the Pontiac Correctional Center and meet the above criteria, shall submit an application for transfer to the Institutional Assignment Committee. If the Committee recommends in favor of the transfer, a Supplemental Program Considerations Report prepared by Clinical Services person-

nel, and appropriate transfer orders, shall be forwarded to the Transfer Coordinator for final review and approval. If a resident who is presently confined to some facility other than the Pontiac Correctional Center desires a transfer to the Pontiac Medium Security Unit and meets most, but not all, of the above criteria, a request may be submitted by the Warden for an exception to be made to the criteria. When requesting consideration for an exception, specific reasons must be provided as to why the resident would appear to be capable of making a satisfactor adjustment at the Medium Security Unit. Such a document is to accompany other transfer materials submitted to the Transfer Coordinator for final review and approval. Please note that transfers to the Medium Security Unit at the Pontiac Correctional Center will normally be made from the Pontiac Correctional Center, although transfers from other institutions will be considered.