**William JACKSON, Plaintiff,**

v.

**ILLINOIS PRISONER REVIEW BOARD, Defendant.**

No. 85 C 4545.

United States District Court, N.D. Illinois, E.D.

March 19, 1987.

Michael J. Charysh, Craig A. Tomassi, Williams & Montgomery, Chicago, Ill., for plaintiff.

Thomas M. Battista, Asst. Atty. Gen., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William Jackson ("Jackson") initially sued the Illinois Prisoner Review Board and its individual members (collectively ("Board") under 42 U.S.C. § 1983 ("Section 1983"), asserting their violation of:

1. the Fourteenth Amendment's due process of law guaranty and

2. the prohibition against ex post facto laws (U.S. Const. Art. I, sec. 10, cl. 1),

both those claims arising out of Board's May 1984 denial of Jackson's parole. This Court's March 14, 1986 memorandum opinion and order (the "Opinion," 631 F.Supp. 150) granted Board's motion to dismiss Jackson's second claim but denied the motion as to the first claim.

Now Jackson and Board have filed cross-motions for summary judgment under Fed.R.Civ.P. ("Rule") 56 as to that remaining claim (the "1984 Due Process

Claim"). Then on November 26, 1986 (after those motions had been fully briefed)[1] Jackson filed a Third Amended Complaint (the "Complaint"), reasserting the original 1984 Due Process Claim and adding a like claim based on Board's May 1986 denial of Jackson's parole (the "1986 Due Process Claim"). On both claims, Jackson asks for declaratory relief plus an award of attorney's fees and costs.[2] For the reasons stated in this memorandum opinion and order, each party's motion is granted in part and denied in part.

### Facts[3]

On December 16, 1977 a Cook County Circuit Court judge sentenced Jackson to 40 to 120 years in prison based on his conviction for murder (¶ 4). Jackson is now an inmate at Stateville Correctional Center ("Stateville") (¶ 2).

On May 2, 1984 Jackson appeared before a three-member Board for a parole hearing (PSF ¶ 1). At that time Illinois Prisoner Review Board Rule IV–C ("Rule IV–C") provided (Jackson R.Mem.Ex. A, at 152):

> A parole candidate shall have access to all documents which the Board shall consider in denying parole or setting a release date. If such documents have not been disclosed to the candidate before the interview, they shall be disclosed to him during the interview. If, in light of the documents, the candidate so desires, he shall be granted a 30–day continuance.

Board's official file concerning Jackson and matters relating to his potential parole ("parole file") (PSF ¶ 2) included two psychological reports (Jackson R.Mem.Ex. D). Jackson did not ask to see, and Board did not provide to Jackson, that parole file before or during the May 2, 1984 hearing (PSF ¶¶ 3 and 4). Board's panel offered to show Jackson only a letter of protest from the State's Attorney's office and letters of support for his parole (PSF ¶ 5). Then, acting under Ill.Rev.Stat. ch. 38, ¶ 1003–3–2, Board's panel deferred Jackson's parole decision to the entire Board (PSF ¶ 6).

On May 8, 1984 Board held an en banc hearing and denied Jackson parole (PSF ¶¶ 7 and 8). In reaching its decision, Board considered documents in Jackson's parole file other than the letters Board's panel had previously offered to show Jackson (PSF ¶ 12). Jackson did not ask to see those documents, and Board did not provide them to him (PSF ¶¶ 9 and 10).

In October 1985 Rule IV–C was replaced by 20 Ill.Admin. Code § 1610.30 ("Section 1610.30") (Jackson Mem.Ex. C):

> (a) Notice to the Inmate. Approximately sixty days prior to his next scheduled parole release hearing, the inmate will be notified in writing by the Board that he has been scheduled on the monthly docket.
>
> (1) Request for Preliminary Record Review
>
> (A) Request By the Inmate. Within fifteen days following the date of the notice of docketing, the inmate may request the opportunity for preliminary review of his parole file by using the form provided by the Board with

---

1. Jackson filed his summary judgment motion and supporting memorandum ("Jackson Mem.") first. Board responded with (1) its own summary judgment motion and (2) a memorandum in support of that motion and in opposition to Jackson's motion ("Board Mem."). Jackson then filed his final memorandum opposing Board's motion ("Jackson R.Mem."). After Jackson tendered the Complaint referred to in this paragraph in the text, Board responded to its new allegations with a final memorandum ("Board Supp.Mem.").

2. Board members enjoy an absolute immunity from damage claims, not only for exercise of their adjudicatory functions but for their administrative activities as well. *Walker v. Prisoner Review Board,* 769 F.2d 396, 398–99 (7th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986). Accordingly Jackson is entitled to seek only prospective relief—a highly relevant factor in this opinion's analysis.

3. Jackson and Board have tendered a statement of "Proposed Stipulated Facts" (cited "PSF ¶ —") for the 1984 Due Process Claim. As for the 1986 Due Process Claim, neither side has submitted a factual summary or any evidence. This opinion's factual summary as to that claim is therefore drawn almost completely (but see n. 6) from the Complaint (cited simply "¶ —"), because Board has filed no Answer denying the Complaint's allegations as to that claim.

the notice. When a timely request for preliminary review is made, the Board will arrange for the inmate to review his parole file, in accord with the provisions of Section 1610.30(b), approximately thirty days prior to his hearing date. If no preliminary request is made or if transfer or security considerations prohibit review, the inmate will be allowed to review his file in accord with Section 1610.30(b), at the time of his release hearing.

\* \* \* \* \* \*

(b) Access to Records by the Inmate (1) The inmate shall have access to all evidence considered by the Board unless the evidence is specifically found to:

(A) Include information which, if disclosed, would damage the therapeutic relationship between the inmate and the mental health professional;

(B) Subject any person to the actual risk of physical harm.

(C) Threaten the safety or security of the Department or an institution. (2) An inmate who wishes to review a document submitted to the Board which bears the signature of a mental health or clinical services employee of the Department of Corrections must request that review through the Department of Corrections pursuant to Department Regulations (20 Ill.Admin. Code 107). The Board will not provide direct access to any documents in this category.

Board does not anticipate any change in Section 1610.30 (Klincar Aff. in Board Mem.Ex. A).

Board conducted another parole hearing May 7, 1986 and again denied Jackson parole (*id.*). Jackson complains of that hearing (¶ 9):

a. [Jackson's] rights under the due process clause of the Fourteenth Amendment were violated when [Board] failed to allow him access to all evidence considered by [Board] concerning his May 7, 1986 parole hearing.

b. [Jackson's] rights under the due process clause of the Fourteenth Amend-

ment were violated when [Board] failed to inform him of the existence of psychological reports within his official file, and the fact that they had been withheld from his consideration.

### *May 1984 Hearing*

Jackson claims Board's refusal to provide him with documents Board considered in denying him parole in 1984 deprived him of the opportunity to ensure Board did not ground its parole decision on erroneous information, thus violating his right to procedural due process. In support of that claim Jackson Mem. 2 cites *Walker v. Prisoner Review Board,* 694 F.2d 499 (7th Cir. 1982), *on remand,* 594 F.Supp. 556 (N.D. Ill.1984), *aff'd,* 769 F.2d 396 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 817, 88 L.Ed.2d 791 (1986).

*Walker* first found (694 F.2d at 501, citing *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, *cert. denied sub nom. McCombs v. Scott,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982)) Illinois law creates an expectancy of release on parole, entitled to due process protection. Next our Court of Appeals examined what process was due a parole candidate: whether due process required Board to provide such a candidate with access to records Board had considered in denying parole. It concluded the "what process is due" question must generally be resolved on a case-by-case basis (694 F.2d at 503):

The relevant inquiry is whether, after taking into account the inherently flexible nature of due process, the combination of procedures available to the parole candidate is sufficient to minimize the risk that a decision will be based on incorrect information.

After setting out that general test, the Court concluded it was unnecessary to apply it where, as in *Walker,* Board had promulgated a rule that "creates for parole candidates a justified expectation of access, and ... specifies precisely an element of due process" (*id.*). Hence, because Rule IV-C expressly entitled parole candidates

to access to all documents considered by Board in denying parole, the Court concluded due process required such access.·

When Board failed to provide Jackson with his parole file in May 1984, that same Rule IV–C was in effect, mandating access to "all documents" Board had considered in denying parole.[4] Nonetheless Jackson cannot be found to have been denied due process, as articulated in Rule IV–C, until this Court addresses a more fundamental issue: whether Jackson's 1984 Due Process Claim was rendered moot when Rule IV–C was replaced by Section 1610.30. After all, mootness would deprive this Court of power to reach the merits of Jackson's claim. *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam).

Jackson's 1984 Due Process Claim for declaratory relief, because not precise as to the exact relief sought, might be viewed in retrospective or prospective terms or both. But whatever perspective is adopted, the answer is the same: It is moot.

 If Jackson really seeks a declaratory judgment as to Board's *past* actions— without any substantive relief involved— neither the Declaratory Judgment Act standard (28 U.S.C. § 2201) nor Article III's "case" or "controversy" requirement is satisfied. *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). As the Supreme Court explained in *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 428, 88

L.Ed.2d 371 (1985) (footnote omitted),[5] the only use a declaratory judgment would have under such circumstances is an impermissible one:

> We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution ·by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment. The teachings of [Great Lakes Co. v.] *Huffman,* [319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)], *Samuels* [v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 668 (1971)], and [Public Service Comm'n v.] *Wycoff* [Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952)], are that a declaratory judgment is not available when the result would be a partial "end run" around our decision in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

See also *Watkins v. Blinzinger,* 789 F.2d 474, 483–84 (7th Cir.1986).

On the other hand, a declaratory action for *prospective* relief would be of no force at all because Rule IV–C is no longer in

---

**4.** Board Mem. 2–3 tries to wriggle out of *Walker's* inexorable grasp by urging (for the second time) that, because Jackson did not request his parole file, Rule IV–C did not require Board to provide it to him. That argument is no more persuasive now than when Board first proffered it. At that time this Court said in the Opinion, 631 F.Supp. at 151–52 (emphasis in original), citing *Walker,* 694 F.2d at 504:

> But the Rule does not require a parole candidate to *ask* for his constitutional rights as a precondition to Board's duty to disclose. It speaks in mandatory terms, using the verb "shall" in every operative provision.
> * * * * * *
> Absent express language in Rule IV–C requiring Jackson to initiate a disclosure request, this Court will not imply such a condition.

**5.** In *Green* a class of benefit recipients under the federal Aid to Families with Dependent Chil-

dren ("AFDC") program sued the Director of the Michigan Department of Social Services, charging certain practices violated Section 1983 and seeking an injunction, declaratory judgment and "notice relief." One putative class challenged the policy of prohibiting the deduction of child care costs in the calculation of earned income. While the action was pending, Congress changed the AFDC provisions so they expressly required participating States to deduct child care expenses up to a specified amount. Another putative class challenged the policy of automatically including a stepparent's income in the calculation of earned income. Again while the action was pending, Congress amended the AFDC program so it expressly required States to include that income in the calculation of earned income.

effect, having been overtaken by Section 1610.30. That being so, a forward-looking declaratory action addressed to Rule IV–C would benefit Jackson only on the double assumption that Board will (1) reenact Rule IV–C and (2) again fail to comply with that Rule. Any such doubly "iffy" claim is not cognizable by a federal court (see *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–07, 103 S.Ct. 1660, 1666–68, 75 L.Ed.2d 675 (1983)).

Instead Jackson R.Mem. 5 argues Jackson's 1984 Due Process Claim is not moot because Board is currently failing to comply with Section 1610.30. But even if that is true (a question this Court next examines), it means only that Jackson is perhaps entitled to declaratory relief for his *1986* Due Process Claim. As for Jackson's *1984* Due Process Claim, this Court finds there is no reasonable expectation Board's violation will recur and therefore concludes that claim is moot (*DeFunis*, 416 U.S. at 318, 94 S.Ct. at 1706).

### May 1986 Hearing

Jackson has alleged he was denied due process during the 1986 parole hearing because (¶ 9(a) and (b)):

1. Board failed to provide Jackson with psychological reports Board had considered in denying Jackson parole; or

2. Board failed to inform Jackson "of the existence of psychological reports within his official file, and the fact that they had been withheld from his consideration." [6]

This opinion looks at each of those assertions.

To determine whether due process required Board to provide Jackson with those reports or that information, *Walker*, 694 F.2d at 503 teaches the appropriate starting place is Section 1610.30 because that Section specifies an element of due process. That being so, if Board did not comply with the Section, this Court must find Jackson was denied due process. If however Board *did* comply with (and thereby provide Jackson the process specified in) Section 1610.30, this Court must determine for itself whether due process required Board to provide Jackson with either:

1. the actual psychological reports or (if the answer to that is "no")

2. notification that Board had considered psychological reports in denying Jackson parole but had withheld those reports from Jackson.

For some reason Jackson R.Mem. examines only whether Board complied with Section 1610.30 and does so solely as to Jackson's second (notification) challenge. Inexplicably, Board Supp.Mem. then ignores that notification question entirely and addresses only the first challenge, arguing Board did not deprive Jackson of due process when it failed to provide him with the actual psychological reports.

■ Examining Jackson's first challenge, this Court finds due process did not require Board to provide Jackson with the psychological reports Board had considered. First, Section 1610.30(b)(2) expressly says "Board will not provide direct access to any documents" that "bear[ ] the signature of a mental health or clinical services employee of the Department of Corrections" ("Department"). Instead parole candidates must, according to that Section, request review from Department directly. Even then, however, Section 1610.-30(b)(1)(A) indicates such documents may be withheld from a parole candidate if they:

Include information which, if disclosed, would damage the therapeutic relationship between the inmate and the mental health professional.

Thus this Court cannot find (and Jackson R.Mem. does not contend) Board's withholding of Jackson's psychological reports

---

6. This opinion's recapitulation of Jackson's 1986 Due Process Clause varies in two ways from the Complaint. First, the general assertion that Board failed to allow Jackson access to "all evidence" Board considered has been particularized by Jackson R.Mem. 4, which indicates Board withheld only psychological reports. Hence this opinion examines that particular challenge (denial of access to psychological reports). Second, the Complaint sets up Jackson's two challenges in the conjunctive, while this opinion frames those really alternative challenges in the disjunctive.

violated Section 1610.30 and therefore denied Jackson the element of due process specified in that Rule.

But *Walker*, 694 F.2d at 503 teaches the "what process is due" inquiry does not end there. Now this Court must determine for itself whether due process required Board to provide Jackson with those reports. On that score *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 13, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) explains:

> Because of the broad spectrum of concerns to which the term [due process] must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

█ Jackson R.Mem. 5 urges a need to minimize the risk of error exists here because Jackson's psychological reports contained "various factual inaccuracies" and, had Jackson been permitted to review the reports, he would have contested those inaccuracies at the parole hearing. True enough, Jackson has a significant interest in ensuring that the information in his parole file is correct (*Walker*, 694 F.2d at 503). But Board also has an interest in withholding those reports from Jackson to protect the therapeutic relationship between Jackson and his psychologists—not to mention other possible interests (*Franklin v. Shields*, 569 F.2d 784, 795 (4th Cir. 1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978)). What this Court must determine, then, is whether the need to correct possible inaccuracies in psychological reports is such that due process compels provision of those reports to each parole candidate, even though it may im-

pair an inmate's relationship with his or her psychologist.[7]

Review of Jackson's psychological reports and Jackson's account of "factual inaccuracies" in those reports convinces this Court the answer is "no." Such reports simply do not contain the types of factual inaccuracies that are generally susceptible to correction by a parole candidate. Dr. Irfan's September 13, 1983 report, for example, summarizes Jackson's complaints to him about the prison and finds:

> This 44-year-old man presents himself as an alert and vocal man who maintains an uneasy, irritable and argumentative posture throughout the interview. Speech is pressured. Referential thinking is suspected but his style of answering a question with a counterquestion makes it difficult to unearth it. Some affective lability is noted but he maintains an overall acceptable control over his feelings and behavior during the interview. Sensorium is clear and his intellectual ability is estimated to be within average range.
>
> * * * * * *
>
> I find no specific psychotic disorder in this interview.[8]

Jackson R.Mem. 5 refers to Jackson's deposition as evidence that report contained factual inaccuracies Jackson could have corrected:

> Q. Did you know that Mr. Muhammed [sic—should be Irfan] on or before September 13, 1983, considered you to be uneasy, irritable, argumentative, and vocal?
>
> A. No, I dddn't [sic] know that.
>
> Q. That's something you would have wanted to talk about with [Board], right?
>
> A. Yeah, I would have liked to discuss it. Yes, I would have.
>
> Q. In fact, you don't consider the 1983 report to be accurate, do you?

---

7. One of the ironies of this action is that it has resulted in disclosure of the reports at issue—essentially creating the potential of causing the very damage Section 1610.30(b)(1)(A) seeks to guard against.

8. [Footnote by this Court] Dr. Lewis' December 29, 1977 report says:

> Resident is of estimated Superior intellectual ability in spite of his limited academic experience (5th grade). He is articulate and in good [illegible]. His values are normative and his controls are adequate. He is not likely to be an adjustment problem within the prison community.

A. No, I do not, because it's not accurate.

Q. It doesn't accurately portray what you were like in May of 1984, does it?

A. No.

That exchange reveals the futility of providing a parole candidate with his or her psychological reports to "minimize the risk of error" in those reports. Because psychological reports by definition tend to contain medical judgments and professional evaluations—not facts in the ordinary sense—little would be gained (and much potentially lost in terms of the inmate-doctor relationship) by their disclosure. Accordingly this Court concludes due process did not require Board to provide Jackson with his psychological reports. Cf. *Franklin*, 569 F.2d at 795.[9]

Having decided that question, this Court must next determine whether due process required Board at least to notify Jackson it had considered, yet withheld from Jackson, psychological reports. If Section 1610.30 requires Board to provide a parole candidate with that information (as Jackson R.Mem. 5 says), Board's failure to comply with that Section denied Jackson due process under the teaching of *Walker*.

■ No language in Section 1610.30 addresses the notification question in so many words. But Subsection (b)(2) says a parole candidate may request review through Department of any document submitted to Board "which bears the signature of a mental health or clinical services employee," even though Board will not provide direct access to such documents. Apparently it is left to Department (upon such request) to make the decision whether or not to withhold those documents to protect the doctor-inmate therapeutic relationship.[10]

■ Jackson R.Mem. 5 is plainly correct in urging that the right to request such review of psychological reports from Department becomes meaningless unless a parole candidate is informed that such documents exist and have been considered by Board. Board Supp.Mem. identifies no reason (and this Court can think of none) why Board should not or cannot provide a parole candidate with that information. Nor is there *any* conceivable justification for Board, having advised the inmate of the exceptions to access in its form, to be totally silent as to the fact the inmate may nonetheless obtain such access by a request to Department (see Appendix). In the familiar due process balancing process set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), there is nothing at all to occupy Board's side of the scales.

Accordingly this Court finds due process, as exemplified in Section 1610.30, required Board to notify Jackson it had considered psychological reports in denying parole but had not provided those reports to Jackson. In terms of the relief sought by Jackson, he is entitled to a declaratory judgment assuring him of such notification in connection with every parole hearing.

### Attorneys' Fees

Board Supp.Mem. 4–5 seeks an award of attorneys' fees because Jackson did not assert his 1986 Due Process Claim until after the parties had fully briefed the motions for summary judgment on the 1984 Due Process Claim. Board Supp.Mem. 5 complains (1) the delay caused Board to

9. In *Bloodgood v. Garraghty*, 783 F.2d 470, 473 (4th Cir.1986) the Fourth Circuit went even farther, holding procedural due process does not require that a parole candidate be given access to his parole file at all—only a statement of reasons why parole has been denied.

10. Board Mem. 6–8 urges the mere existence of Section 1610.30(b), plus the form provided inmates (Appendix to this opinion), moot the issue posed by the 1986 Due Process Claim as well. Quite the contrary is true—indeed, Board's form simply apprises the inmate of the exceptions to access (paraphrasing the exceptions in Section 1610.30(b)) without giving any hint of whether his file in fact contains any documents fitting the description *or* of the crucial fact he has a right to request those documents from Department. There is certainly a ripe "case" or "controversy" between Jackson and Board as to what the latter is obligated to do under its own due-process-embodying rule—one the Eleventh Amendment does not foreclose, as Board Mem. 3–5 would have it (see *Kashani v. Purdue University*, 813 F.2d 843, 848 (7th Cir.1987)).

"expend more time, unnecessarily, to defend and respond to the new allegations" and (2) the 1986 Due Process Claim is "without any legal basis" and was "brought in bad faith."

■ Board's second contention has just evaporated with its partial (but significant) loss on the 1986 claim. As for its first argument, Board Supp.Mem. fails even to attempt to show how Jackson's *delay* caused Board to expend more time "unnecessarily" responding to the new claim. And even if it had succeeded in doing so, Board Supp.Mem. cites no authority suggesting this Court may award attorney's fees against a party simply for delay in asserting a claim.

■ *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160 (7th Cir.1983), upholding this Court's denial of fees to a prevailing Title VII defendant (No. 79 C 2122, slip op. (N.D.Ill. July 21, 1982)), teaches such a party may at best call on a "limited exception" to the American Rule that each party pays its own lawyers, applicable (717 F.2d at 1165, quoting Comment, *Attorneys' Fee Awards to Complex Litigation Defendants: Striking a Balance*, 77 Nw.U.L.Rev. 818, 826 (1983)):

> only if the trial court finds both that the litigant who filed the claim or motion acted in subjective bad faith, and that the claim or motion was unsupported by probable cause.

Neither requirement is satisfied here. Indeed Jackson has in fact prevailed as to part of his 1986 Due Process Clause claim. Board's request for attorney's fees is denied.

■ But 42 U.S.C. § 1988 is not even-handed in its application. Because of the congressional policy favoring plaintiffs in this class of litigation (see *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418–19, 98 S.Ct. 694, 698–99, 54 L.Ed.2d 648 (1978) and *Coates v. Bechtel*, 811 F.2d 1045, 1049–50 & n. 3 (7th Cir. 1987)), Jackson *is* entitled to an award of fees—potentially restricted, however, by his having prevailed only to a limited extent (*Spanish Action Committee of Chicago v. City of*

*Chicago*, 811 F.2d 1129, 1133–34 (7th Cir. 1987)).

### Conclusion

No genuine issue of material fact exists as to either of Jackson's claims (Board not having challenged the Complaint's allegations). Hence each prevailing party is entitled to a judgment in part as a matter of law.

Board is entitled to a judgment in its favor as to (1) the 1984 Due Process Claim in its entirety and (2) the 1986 Due Process Claim to the extent it is based on Board's failure to provide Jackson with psychological reports Board had considered in denying Jackson parole. In all other respects Board's summary judgment motion is denied, as is its request for attorney's fees.

Jackson is entitled to a judgment in his favor as to the 1986 Due Process Claim to the extent it is based on Board's failure to notify Jackson that Board had considered psychological reports in denying Jackson parole but had withheld those reports from Jackson. This Court hereby declares Board, so long as Section 1610.30 remains in effect, has the duty to notify Jackson in connection with each scheduled parole release hearing (a) of the extent, if any, to which any document submitted to Board for its consideration bears the signature of a mental health or clinical services employee of Department and (b) of the procedure for requesting Department to afford him access to such document. Such notification shall take place (a) within seven days after Board's receipt of Jackson's request for preliminary review of his parole file under Section 1610.30(a)(1) or (b) as to each document bearing such signature that is received by Board after Jackson's said request, within seven days after Board's receipt of such document.

Though this opinion's rulings dispose of every remaining substantive issue in the case and thus represent a final (and appealable) order, the collateral issue of the amount of Jackson's award of attorneys' fees remains open. Fee disputes, to the extent they cannot be resolved without an evidentiary hearing, are wasteful and coun-

terproductive: They engender fees-on-fees, so the likely result of more time and effort being expended is an enlarged rather than a narrowed controversy.

Accordingly Jackson's counsel is ordered to deliver to Board's counsel and this Court, on or before April 7, 1987, a motion for a fee award reflecting:

1. an itemization of the time spent by each lawyer, reflecting the hourly rates claimed;

2. a statement of any factors, other than time and hourly rate, Jackson's counsel deems relevant to the fee award; and

3. a showing of the extent, if any, to which the request has been reduced to take into account Jackson's less-than-total success in this action.

Counsel for both sides are then directed to confer in an effort to narrow or eliminate entirely any need for an evidentiary hearing. This action is set for a status report April 21, 1987 at 9:15 a.m. to discuss the posture of the fees claim and set any necessary procedures for its resolution.

