**Clarence W. WALKER,**
**Plaintiff-Appellant,**

v.

**PRISONER REVIEW BOARD, James R. Irving, Chairman, Defendant-Appellee.**

No. 79–2309.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 21, 1980.

Decided Dec. 2, 1982.

Scott Harris (Student), for plaintiff-appellant.

Faith S. Salsburg, Asst. Atty. Gen., Chicago, Ill., for defendant-appellee.

Before CUDAHY, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and TEMPLAR,* Senior District Judge.

FAIRCHILD, Senior Circuit Judge.

Inmate Clarence W. Walker commenced this § 1983 action against the Illinois Board of Prisoner Review (Board), claiming a denial of due process in the manner in which it denied him parole. Liberally construed, his *pro se* complaint alleged insufficiency of the reasons given for denial, refusal of an opportunity to review the entire record considered by the Board, and an erroneous conclusion by the Board that his sentences were consecutive rather than concurrent.

The Board moved for dismissal (or alternatively for summary judgment). The district court dismissed. The court was of the opinion that because the Board had followed certain procedures considered adequate in *Greenholtz v. Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), denial to plaintiff of access to his file was not a denial of due process; and that the Board's statement of reasons was sufficient. The court did not address the claim concerning the sentences, concluding that this was a challenge to the duration of imprisonment, which could only be raised by petition for habeas corpus after exhaustion of state remedies. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

Plaintiff appealed, and we appointed counsel on appeal.

### I. Propriety of § 1983 Action

█ The Board has not argued that plaintiff's due process claims could only be asserted, after exhaustion of state remedies, in a petition for habeas corpus. His complaint did not assert a right to be released on parole, and sought only an injunction requiring rehearing by the Board in accordance with due process. We note that in *Williams v. Ward,* 556 F.2d 1143, 1150 (2d Cir.1977), a petition challenging parole pro-

cedures was held cognizable under § 1983 because the relief sought might have improved petitioner's chances of parole, although the question of release still would remain within the discretion of the parole board. *Cf. Fernandez v. Trias Monge,* 586 F.2d 848, 852 n.4 (1st Cir.1978); *Wright v. Cuyler,* 624 F.2d 455, 458 n.5 (3d Cir.1980). *Greenholtz, supra,* was a § 1983 action. *See also Bradford v. Weinstein,* 519 F.2d 728, 733–34 (4th Cir.1974), *vacated and remanded,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (moot); *Haymes v. Regan,* 525 F.2d 540, 542 (2d Cir.1975).

We conclude that the due process claims are the proper subject of a § 1983 action seeking injunctive relief as to constitutionally required procedure.

### II. The Board's Statement of Reasons

The district court assumed, without deciding, that under *Greenholtz, supra,* Illinois law creates an expectancy of release on parole which is entitled to due process protection. This court has since decided that proposition affirmatively. *United States ex rel. Scott v. Illinois Parole and Pardon Board,* 669 F.2d 1185, *cert. denied sub nom. McCombs v. Scott,* —— U.S. ——, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).

The complaint alleged that after plaintiff became eligible for parole, parole was denied January 4, 1977, January 24, 1978, and December 5, 1978. It was alleged that each denial was made because of the serious nature of the offense. Only the text of the December 5, 1978 statement of reasons was set forth, as follows:

The above action is taken based on the Board's feeling that parole at this time would deprecate the seriousness of the crime for which you were convicted and would promote disrespect for the law. This is [based] on the crimes of Rape, Armed Robbery and Attempted Murder [for] which you received sentences ranging from 100–150 and 19–20 years. Due to the 100 years [minimum], you do not qualify for a release date under the provisions of the new law.

---

* Senior District Judge George Templar of the District of Kansas is sitting by designation.

Board counsel states that the last sentence related solely to the question whether the Board was required by statute to set a fixed release date and that it·formed no part of the Board's reasons for denial of parole. Counsel for plaintiff agrees, and we accordingly give no further consideration to this sentence. Plaintiff argues that he was deprived of due process because the Board denied parole based on the same grounds earlier used to justify rejection of the two previous applications and because it failed to state the facts underlying its decision.

■ The first argument is clearly without merit. Both Ill.Rev.Stat. ch. 38, § 1003-3-5(c) and Rule V of the Rules Governing Parole require the Board to deny parole to a candidate if release at that time would deprecate the seriousness of his offense or cause disrespect for the law. Neither the statute nor the Rule places a limitation on the number of times these reasons may be invoked to justify rejection of an application, and Walker, quite simply, has produced no authority to show otherwise. We hold that so long as the Board assesses each application in good faith, with particular regard to the inmate's rehabilitation and prison behavior record,[1] there is no restriction on how often parole may be denied because release would deprecate the seriousness of the crime or cause disrespect for the law. We do not think that the Board's obligation to consider institutional behavior and any other evidence of rehabilitation necessitated, as a condition precedent to denial, an assertion in the statement of reasons that such behavior and evidence have been considered and that favorable factors have been deemed outweighed.

■ Plaintiff's second proposition argues that a reference to his crimes accompanied by a recitation of the statutory language, that parole would deprecate the seriousness of the crimes of which the prisoner was convicted and promote disrespect for law, is not a sufficient statement of the facts underlying the Board's decision.

In *United States ex rel. Scott v. Illinois Parole and Pardon Board, supra,* this court considered the adequacy of a statement that release, after service, apparently, of eleven years would deprecate the severity of the crime, namely murder, with a 25–40 year sentence. The court held the statement would be sufficient if in fact the Board had a practice of automatically denying parole to inmates convicted of murder, and remanded so that the district court could determine the practice of the Board. The *Scott* panel noted the absence of reference to the specific criminal conduct of the prisoner as distinguished from the label of the offense. .

Our present case is different in large degree. The Board's statement refers to three offenses, rape, armed robbery, and attempted murder. The combination of the three indicates something about the seriousness of plaintiff's criminal conduct. We are told that the statutory minimum for each offense was four years for rape, two years for armed robbery, and apparently no minimum, but a statutory maximum of 20 years for attempted murder. Although sentences of 100 to 150 years are pretty ridiculous in the nature of things (more so when made consecutive) they at least demonstrate together with the 19 to 20 years for attempted murder that the specific conduct was considered especially heinous by the sentencing judge. Under these circumstances, we think that the Board could well have concluded that it would deprecate the seriousness of the offense or cause disrespect for the law to parole plaintiff after thirteen years. No further articulation of the thought process or statement of a factual predicate for the Board's reasons for denial was required. *See generally Greenholtz,*

---

1. The significance of those factors was stressed in *Greenholtz, supra,* where the Court emphasized that, "It is important that we not overlook the ultimate purpose of parole which is a component of the long-range objective of rehabilitation," 442 U.S. at 13, 99 S.Ct. at 2106, and that, "The behavior record of an inmate during confinement is critical in the sense that it reflects the degree to which the inmate is prepared to adjust to parole release." *Id.* at 15, 99 S.Ct. at 2107.

*supra,* 442 U.S. at 15, 99 S.Ct. at 2107 ("nothing in the due process concepts as they have thus far evolved ... requires the Parole Board to specify the particular 'evidence' in the inmate's file or at his interview on which it rests [its] discretionary determination").

### III. Access to Parole File

Walker's complaint alleged that in a petition for rehearing he had told the Board that he was refused the right to review the entire record which the Board had considered. He alleged he had been told by the Board that there were certain letters in it which he could not see. He asserted that he was thus deprived of an opportunity to make sure that the decision of the Board was not based on erroneous information.

We note at the outset that the danger posed to a parole candidate by the risk that his records contain incorrect information is clearly not insignificant. The interest at stake, namely conditional release, is undoubtedly valuable; "the decision [to grant or deny parole] is one that must be made largely on the basis of the inmate's files," *Greenholtz, supra,* 442 U.S. at 15, 99 S.Ct. at 2107; and, on occasion, "researchers and courts have discovered many substantial inaccuracies" in prisoner records, *id.* at 33, 99 S.Ct. at 2117 (Marshall, J., dissenting).

■ Whether the Constitution requires that a parole applicant have access to his file, or at least to the documents relied upon by the decision-maker, is a question of some dispute. Plainly this specific safeguard is not so basic to compliance with traditional notions of due process as are the more general requirements of notice and hearing. Yet, the cases which have held that prisoners have no constitutional right to information in a parole board's files seem to us to represent *ad hoc* determinations, and are not expressions of an absolute, invariable rule, *see Dye v. United States Parole Commission,* 558 F.2d 1376 (10th Cir.1977) (*per curiam*); *Billiteri v. United States Parole Board,* 541 F.2d 938, 945 (2d Cir.1976); *see also Schuemann v. Colorado State Board of Adult Parole,* 624 F.2d 172, 175 (10th Cir.

1980). Whether such access is mandated by due process must be resolved on a case by case basis. *See Williams, supra,* 556 F.2d at 1159–60 (narrowly interpreting *Billiteri, supra*). The relevant inquiry is whether, after taking into account the inherently flexible nature of due process, the combination of procedures available to the parole candidate is sufficient to minimize the risk that a decision will be based on incorrect information. *See Greenholtz, supra,* 442 U.S. at 12–13, 99 S.Ct. at 2106. We think the district court erred in relying on *Greenholtz* to conclude that due process does not require access to files. In *Greenholtz,* the Court observed, "there is no issue before us regarding access to [inmate] files." 442 U.S. at 15 n.7, 99 S.Ct. at 2108 n.7.

■ In the instant case, however, we need not determine on our own what due process requires, for directly relevant to the present question is a provision of the Board's Rules Governing Parole. Rule IV–C expressly provides:

Records Access

A parole candidate shall have access to all documents which the Board considers in denying parole or setting a release date. If such documents have not been disclosed to the candidate before the interview, they shall be disclosed to him during the interview. If, in light of the documents, the candidate so desires, he shall be granted a 30-day continuance.

Ill.Reg., vol. II, no. 44. The language of the Rule is clear, mandatory, and without qualification. It contains no exception for withholding documents considered from a parole candidate, nor does defendant suggest a basis for reading in such an exception. We think the Rule creates for parole candidates a justified expectation of access, and that it specifies precisely an element of due process. The three arguments defendant makes in attempting to escape the force of the Rule are each without merit.

Defendant first claims that Walker has failed to show that the letters allegedly withheld by the Board were ever "considered" by the Board in deciding to deny

parole. He has, however, alleged that he was told at the time of the hearing that there were certain letters he could not see. That allegation is sufficient to survive a motion to dismiss. Moreover, the complaint averred that Walker called the attention of the Board to such letters in his petition for rehearing. The Board, although reciting that it had reviewed the entire file, denied the petition for rehearing without any reference to the claim that there were such letters.

Second, defendant suggests, somewhat timidly, that it was at the first hearing, before the issuance of Rule IV–C, that Walker alleges he was told there were letters he could not see. This contention simply finds no support in the language of the complaint. Paragraph four thereof claims that Walker brought the alleged statement to the Board's attention in the petition for rehearing, and other portions of the complaint make clear that the rehearing petition was filed in reference to his third hearing. The logical inference is that the alleged statement was made at the third hearing. Even assuming that plaintiff might have been so misguided as to have sought rehearing of his third denial because of what had taken place only at an earlier hearing, there still exists a question of fact as to when the statement was made which, under the liberal standards of *pro se* pleading, is sufficient to defeat the defendant's motion for dismissal.

█ Finally, defendant argues that this court is not required to enforce compliance with an administrative regulation where compliance is not mandated by the Constitution or by statute. While that is a correct statement of law, *see United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (tape recordings made in violation of IRS regulation prohibiting consensual electronic surveillance held not re-

quired to be excluded from evidence), it is a rule inapplicable to the case at hand. Here, the requirements of Rule IV–C recognize and implement the Board's constitutional obligation to accord parole candidates due process in connection with denials of parole. The situation is analogous to that in *Bridges v. Wixon,* 326 U.S. 135, 152–53, 65 S.Ct. 1443, 1451–52, 89 L.Ed. 2103 (1945), where the Supreme Court: "held invalid a deportation ordered on the basis of statements which did not comply with the Immigration Service's rules requiring signatures and oaths, finding that the rules were designed to 'afford [the alien] due process of law' by providing 'safeguards against essentially unfair procedures.'" *Caceres, supra,* 440 U.S. at 749, 99 S.Ct. at 1470 (brackets in *Caceres;* footnote omitted). *See also United States ex rel. Bilokumsky v. Tod,* 263 U.S. 149, 155, 44 S.Ct. 54, 56, 68 L.Ed. 221 (1923).

There can be little doubt that by enacting Rule IV–C the State of Illinois intended to benefit parole candidates and to fulfill its due process obligations to them.[2]

## IV. The Matter of the Sentences

█ The Board referred, in its statement of reasons, to the sentences actually imposed. Plaintiff asserts that a statute enacted since Walker was sentenced has changed the effect of the sentences so that appellant now stands committed for a single indeterminate term with a maximum of 60 years. Ill.Rev.Stat. ch. 38, § 1005–8–4(c) and (e) (1977). As already suggested, the view of the sentencing judge as to the sentences appropriate for plaintiff's conduct is reflected in the sentences actually imposed, even though the Legislature has later changed the effect of the sentence. The district court correctly determined that if there is a dispute over the period the sen-

---

**2.** *See generally Note, Violations by Agencies of Their Own Regulations,* 87 Harv.L.Rev. 629, 629–30 (1974) (footnotes omitted):

Most courts which have allowed departures have based their conclusions on findings that the regulation which was violated was intended to govern internal agency procedures,

rather than to protect any interest of the objecting party. Agency violations of regulations which had been promulgated to benefit a party, by entitling him to a substantive benefit or exemption or to a procedural safeguard, have generally been invalidated by courts.

tences authorize the state to hold plaintiff in custody, that dispute is not to be resolved in a § 1983 action.

Accordingly, the judgment of dismissal is reversed and the cause remanded with direction to determine the merits of plaintiff's claim that the Board considered papers which it did not permit plaintiff to see.

Counsel for plaintiff was appointed by this court, serving *pro bono*. Plaintiff has prevailed in part and his counsel is allowed the costs of duplicating the brief, appendix, and reply brief.