William JACKSON, Plaintiff,

v.

ILLINOIS PRISONER REVIEW
BOARD, Defendant.

No. 85 C 4545.

United States District Court,
N.D. Illinois, E.D.

March 14, 1986.

Michael J. Charysh, Thomas F. Cameli, Williams & Montgomery, Ltd., Chicago, Ill., for plaintiff.

Neil F. Hartigan, Atty. Gen., Thomas Batista, Asst. Atty. Gen., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William Jackson ("Jackson") sues the Illinois Prisoner Review Board and its individual members (collectively "Board") under 42 U.S.C. § 1983 ("Section 1983"), asserting two claims:

1. a violation of the Fourteenth Amendment's due process of law guaranty; and

2. a violation of the prohibition against ex post facto laws (U.S. Const. art. I, § 10, cl. 1);

both arising out of Board's denial of Jackson's parole. Board has now moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss Jackson's Second Amended Complaint (the "Complaint"). For the reasons stated in this memorandum opinion and order, the motion is granted in part and denied in part.

### Facts [1]

Jackson is an inmate at Stateville Correctional Center ("Stateville") On December 16, 1977 a Cook County Circuit Court judge imposed a 40 to 120 year sentence on Jack-

---

1. For purposes of the motion to dismiss, this Court has accepted as true the Complaint's well-pleaded factual allegations, drawing all reasonable factual inferences in Jackson's favor. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir. 1984).

son based on his conviction for murder (Complaint ¶ 4). On May 2, 1984 Jackson appeared before a three-member panel of Board for a parole hearing (Complaint ¶ 6). Acting under Ill.Rev.Stat. ch. 38, ¶ 1003-3-2 ("Section 1003-3-2"), the three-member panel deferred Jackson's parole decision to the entire Board (Complaint ¶ 7). On May 8, 1984 Board denied Jackson parole (Complaint ¶ 8).

### Due Process Claim

■ Jackson claims Board's refusal to disclose documents relied on by Board in its parole decision violated the Due Process Clause. Jackson asserts such nondisclosure deprived him of an opportunity to ensure Board did not ground its parole decision on erroneous information.

*Walker v. Prisoner Review Board,* 694 F.2d 499, 503 (7th Cir.1982) has addressed the general scope of due process claims of access to parole files:

> Whether the Constitution requires that a parole applicant have access to his file, or at least to the documents relied upon by the decision-maker, is a question of some dispute. Plainly this specific safeguard is not so basic to compliance with traditional notions of due process as are the more general requirements of notice and hearing. Yet, the cases which have held that prisoners have no constitutional right to information in a parole board's files seem to us to represent *ad hoc* determinations, and are not expressions of an absolute, invariable rule.... Whether such access is mandated by due process must be resolved on a case by case basis ... The relevant inquiry is whether, after taking into account the inherently flexible nature of due process, the combination of procedures available to the parole candidate is sufficient to minimize the risk that a decision will be based on incorrect information.

But *Walker, id.* did not find it necessary to decide whether the Due Process Clause

would of itself require access to parole files. Instead our Court of Appeals focused on Board's own Rule IV-C:

> Records Access
>
> A parole candidate shall have access to all documents which the Board considers in denying parole or setting a release date. If such documents have not been disclosed to the candidate before the interview, they shall be disclosed to him during the interview. If, in light of the documents, the candidate so desires, he shall be granted a 30-day continuance.

*Walker,* 694 F.2d at 503 held that Rule created a due process entitlement of access to parole files for a parole candidate:

> The language of the Rule is clear, mandatory, and without qualification. It contains no exception for withholding documents considered from a parole candidate, nor does defendant suggest a basis for reading in such an exception. We think the Rule creates for parole candidates a justified expectation of access, and that it specifies precisely an element of due process.

Board argues unpersuasively Jackson has not alleged that he requested his parole file, a failure that waived his right of access to the file under Rule IV-C.[2] But the Rule does not require a parole candidate to *ask* for his constitutional rights as a precondition to Board's duty to disclose. It speaks in mandatory terms, using the verb "shall" in every operative provision. *Walker,* 694 F.2d at 504 (footnote omitted) stated Board's obligations flatly:

> Here, the requirements of Rule IV-C recognize and implement the Board's constitutional obligation to accord parole candidates due process in connection with denials of parole.
>
> \* \* \* \* \* \*

There can be little doubt that by enacting Rule IV-C the State of Illinois intended to benefit parole candidates and to fulfill its due process obligations to them.

---

**2.** Jackson responds in part by urging the present pleading stage is inappropriate for determination of the factual issue of whether he

did or did not request his file. But *Walker,* 694 F.2d at 504 makes that issue simply irrelevant.

Board cannot evade those obligations by inventing preconditions not specified in the Rule itself.

Absent express language in Rule IV–C requiring Jackson to initiate a disclosure request, this Court will not imply such a condition. Jackson's due process claim withstands Board's motion to dismiss.

### Ex Post Facto Claim

■ Jackson also claims the rendition of his parole decision by the entire Board under Section 1003–3–2 violated the constitutional prohibition against ex post facto laws. Jackson's argument is relatively straightforward. When he was sentenced in December 1977 Section 1003–3–2(a)(2) required "a panel of at least 3 members" to make all parole decisions. In February 1984 Board adopted a specific parole policy for parole candidates who had received a minimum sentence of 20 years (Complaint Ex. E):

> The Prisoner Review Board has adopted a policy that any resident of the Department of Corrections whose sentence is 20 years or more will be heard by a panel of the Prisoner Review Board and that panel will submit the case to the Board at an "en banc" hearing at which time a determination will be made as to whether "parole will be granted" or "parole denied."
>
> *    *    *    *    *    *
>
> (3) The action of a simple majority of the members who consider the case on [the "en banc"] day will constitute the action of the full Board. To obtain release on parole in an "en banc" case the inmate must receive an affirmative vote only of the majority of the members who consider his case on that day.

Later that year a comparable amendment to Section 1003–3–2(a)(2) itself was adopted, effective in September 1984—after Jackson's parole hearing:

> [T]he Prisoner Review Board shall ... (2) through a panel of at least 3 members, determine the conditions of parole and the time of discharge from parole, impose sanctions for violations of parole, and revoke parole for those sentenced

under the law in effect prior to this amendatory Act of 1977; provided that the decision to parole and the conditions of parole for all prisoners who were sentenced for murder or who received a minimum sentence of 20 years or more under the law in effect prior to February 1, 1978 shall be determined by a majority vote of the Prisoner Review Board.

Factually, of course, Board conducted Jackson's parole hearing pursuant to its "policy" announced in February 1984 and not pursuant to the later-amended version of Section 1003–3–2(a)(2). But in any event Jackson contends requiring an en banc Board decision rather than a three-member panel decision introduced a factor that had not existed when he was convicted and sentenced and that makes it more difficult for him to obtain parole.

*Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (footnotes omitted) teaches:

> [T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.

Board does not dispute its policy was "retrospective" in the *Weaver* sense. But Board contends its policy change did not disadvantage Jackson. Board correctly notes nothing in the 1977 version of Section 1003–3–2 *entitled* a parole candidate to a parole panel of only three members. Instead the statute simply set a minimum number of Board members required to conduct parole hearings. Board argues it always had the right to make the decision as to Jackson's parole via the entire Board. Hence Board reasons its actions under the 1984 policy could not have disadvantaged Jackson.

Jackson urges the issue of "disadvantage" is one of *fact,* relying on *Prater v. United States Parole Commission,* 764 F.2d 1230, 1236 (7th Cir.1985). If that were so, Board could not obtain resolution

of the factual issue on the current motion to dismiss.

*Prater* does not control here. In that case a statute enacted after the defendant's sentencing had added a new criterion to the parole board's guidelines. Nonetheless the parole board resisted an ex post facto claim, arguing the new criterion could have guided its parole decisions even before the new statute made it an explicit precondition of parole.

*Prater* rejected that contention, holding the parole candidate's ex post facto argument presented a factual question on the "disadvantage" branch of the *Weaver* dichotomy. That factual issue required an inquiry into the parole board's actual practice before and after the statutory change (764 F.2d at 1236) (emphasis in original):

> We feel, therefore, that the court below was incorrect in deciding *as a matter of law* that Prater could not have been disadvantaged by the change in the statute. It seems to us simply impossible to draw this conclusion out of the statutory language alone.

Here, by contrast, the "statutory language alone" of Section 1003–3–2 at the time of Jackson's conviction specifically left it to Board's discretion to fix the size of its decisionmaking bodies, subject only to the minimum requirement that at least three members be involved.[3] No standards for the exercise of that discretion were set by the statute—the classic hallmark of a decision viewed by the legislature as purely procedural.[4] And on that score *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) teaches:

> Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto*.

Thus even if the adoption of the February 1984 policy were viewed as a change in Board's decision-making procedures, and even were that change viewed as disadvantageous to Jackson, this case *still* would not implicate ex post facto concerns.

Moreover, characterizing the policy statement as a "change" is itself problematic in light of the absolute discretion Section 1003–3–2 always vested in Board. When Jackson was convicted and sentenced, Board had the unfettered right to render its decisions by panels of more than three members, without any upper limit. In light of that explicit statutory language, Jackson could claim no justifiable expectation of a three-member panel hearing. And Board's then-existing practice (whatever it may have been) could not create such an expectation in constitutional terms.

However viewed, then—whether in terms of the absence of any change, or in terms of any change being purely procedural, or in terms of the absence of any disadvantage, or in terms of a combination of two or more of those factors—Jackson's ex post facto argument fails. He is left to his due process claim.

### Conclusion

Jackson's Complaint is set forth in a single count for declaratory relief. Its prayer for a declaration of ex post facto violation is denied, but its due process claim survives dismissal (at least in purely pleading terms, the only matter now at issue).

---

**3.** Legislative history in the conventional sense does not exist in the Illinois General Assembly. However, the obvious thrust of the statute was to deny to a single individual the power to make the important societal (and human) decision of parole.

**4.** It is true that a decision by the full Board requires more votes to grant Jackson parole than if a three-member panel decided his case.

But it is also true that two "nay" votes would deny parole in a three-member panel but not in a full-board decision. As in an en banc court decision, a vote by the full board eliminates any fortuitous results from the chance assignment of a panel. So long as a majority vote controls, the matter must be viewed as procedural and not substantive.