William JACKSON, Plaintiff–Appellee,

v.

ILLINOIS PRISONER REVIEW BOARD, et al., Defendants–Appellants.

No. 87–2312.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 1988.

Decided Sept. 2, 1988.

Rita M. Novak, Office of Illinois Atty. Gen., Chicago, Ill., for defendants-appellants.

Barry L. Kroll, Williams & Montgomery, Ltd., Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

In 1985, William Jackson brought an action against the Illinois Prisoner Review Board (the "Board") under 42 U.S.C. § 1983. Jackson, a prisoner at Stateville Correctional Center, claimed that he was denied due process of law at his parole hearing when the Board failed to follow its own rules regarding access to documents it considered in deciding whether to grant Jackson parole. Plaintiff sought a declaration that his rights were violated and a new hearing. The Board amended its rules in May of 1985; Jackson amended his complaint, contending in part that under the amended rule he was entitled to notice of which documents the Board considered. The district court agreed with Jackson's argument that the Board was required by its own rules to give such notice, and awarded Jackson attorneys' fees of $15,-180.57 under 42 U.S.C. § 1988. The Board appeals only from the fee award. We affirm in part and reverse in part.

## I.

Jackson filed a pro se complaint on May 15, 1985 challenging the Board's procedures related to his May 1984 parole hearing (the "1984 hearing").[1] The court appointed counsel, who filed a two-count complaint under 42 U.S.C. § 1983 alleging: 1) that the Board denied Jackson due process by failing to provide him copies of documents in his file (specifically two psychological reports) which the Board considered in denying him parole; and 2) that deferring his hearing to a quorum of the entire Parole Board violated the *ex post facto* clause of article 1 of the Constitution. The district court denied the Board's motion to dismiss the first count of the complaint, ruling that under *Walker v. Prisoner Review Bd.*, 694 F.2d 499 (7th Cir.1982) the Board's Rule IV–C[2] gave parole candidates

---

1. The three-member parole panel deferred Jackson's parole decision to the entire Board, which denied Jackson parole on May 8, 1984.

2. Records Access
   A parole candidate shall have access to all documents which the Board shall consider in denying parole or setting a release date. If such documents have not been disclosed to the candidate before the interview, they shall be disclosed to him during the interview. If, in light of the documents, the candidate so desires, he shall be granted a 30-day continuance.
   Ill.Pris.Rev.Bd. Rule IV–C (superseded).

a due process entitlement of access to parole files regardless of whether the prisoner requested such access. *Jackson v. Illinois Prisoner Review Bd.*, 631 F.Supp. 150 (N.D.Ill.1986).

The court granted the Board's motion to dismiss the *ex post facto* claim, however. This claim was based on the fact that when Jackson was sentenced in December 1977, Ill.Rev.Stat. ch. 38, ¶ 1003–3–2 ("Paragraph 1003–3–2") required "a panel of at least 3 members" to make all parole decisions. Paragraph 1003–3–2(a)(2) was amended, effective September 1984, to reflect a February 1984 policy change requiring a vote of the majority of the Board[3] for parole decisions of all prisoners serving a sentence of 20 years or more.[4] Jackson's 1984 parole hearing was conducted by the en banc Board. The court rejected Jackson's argument that it was unconstitutional to apply the en banc review procedure to him. The relevant statutory language in effect at the time of Jackson's sentencing, the court held, was "purely procedural," and thus even if the adoption of a new policy were viewed as a change, and even if this change disadvantaged Jackson, it did not violate the *ex post facto* clause. *Id.* at 153.

Both parties then moved for summary judgment on the due process claim. The Board asserted, despite the district court's earlier ruling based on *Walker*, that Jackson's failure to request any documents defeated his due process argument. The court again rejected this contention. The Board also argued that a rule change subsequent to Jackson's 1984 parole hearing had mooted his claim. In October 1985 Rule IV–C was replaced by 20 Ill.Admin. Code § 1610.30,[5] which exempts from the disclosure requirement any evidence whose disclosure might harm any person, the prison, or the relationship between the inmate and a mental health professional. The new provision prohibits the Board from directly providing an inmate with any document signed by a mental health professional, but allows the inmate to request such a document from the Department of Corrections.

---

**3.** § 3–3–2. Powers and Duties. (a) ... [T]he Prisoner Review Board ... shall:

   \*　\*　\*　\*　\*　\*

   (2) through a panel of at least 3 members, determine the conditions of parole and the time of discharge from parole, impose sanctions for violations of parole, and revoke parole for those sentenced under the law in effect prior to this amendatory Act of 1977; provided that the decision to parole and the conditions of parole for all prisoners who were sentenced for first degree murder or who received a minimum sentence of 20 years or more under the law in effect prior to February 1, 1978 shall be determined by a majority vote of the Prisoner Review Board....

Ill.Rev.Stat. ch. 38, ¶ 1003–3–2.

**4.** In 1977, Jackson received a sentence of 40 to 120 years for murder.

**5.** (a) Notice to the Inmate. Approximately sixty days prior to his next scheduled parole release hearing, the inmate will be notified in writing by the Board that he has been scheduled on the monthly docket.

   (1) Request for Preliminary Record Review

   (A) Request By the Inmate. Within fifteen days following the date of the notice of docketing, the inmate may request the opportunity for preliminary review of his parole file by using the form provided by the Board with the notice. When a timely request for prelim-

inary review is made, the Board will arrange for the inmate to review his parole file, in accord with the provisions of Section 1610.-30(b), approximately thirty days prior to his hearing date. If no preliminary request is made or if transfer or security considerations prohibit review, the inmate will be allowed to review his file in accord with Section 1610.-30(b), at the time of his release hearing.

   \*　\*　\*　\*　\*　\*

   (b) Access to Records by the Inmate

   (1) The inmate shall have access to all evidence considered by the Board unless the evidence is specifically found to:

   (A) Include information which, if disclosed, would damage the therapeutic relationship between the inmate and the mental health professional;

   (B) Subject any person to the actual risk of physical harm.

   (C) Threaten the safety or security of the Department or an institution.

   (2) An inmate who wishes to review a document submitted to the Board which bears the signature of a mental health or clinical services employee of the Department of Corrections must request that review through the Department of Corrections pursuant to Department Regulations (20 Ill.Admin. Code 107). The Board will not provide direct access to any documents in this category.

20 Ill.Admin. Code § 1610.30.

On May 7, 1986, during the pendency of his suit over the 1984 hearing, Jackson was given a new parole hearing (the "1986 hearing") under the new rules. He amended his complaint, asserting that even under the new provision, the Board should have provided him with psychological reports it considered, or alternatively, should have at least informed him that such reports were part of the file considered in denying him parole. The district court agreed with the Board that a declaratory judgment action as to the policy in effect at the 1984 hearing could afford no prospective relief, and that the claim was therefore moot. *Jackson v. Illinois Prisoner Review Bd.*, 657 F.Supp. 823 (N.D.Ill.1987). The court ruled that § 1610.30(b)(2) and (b)(1)(a) authorized withholding the psychological reports, and that "the need to correct possible inaccuracies in psychological reports" did not amount to a due process requirement that they be provided to each parole candidate. However, the court agreed with Jackson that under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), due process required the Board to notify Jackson that it had considered psychological reports in denying him parole. Otherwise, the court held, the right under § 1610.30(b)(2) to request review of psychological reports from the Department would be meaningless.

Jackson thus succeeded to the extent that he received a declaratory judgment that the Board had denied him due process in 1986 by not informing him that it considered psychological reports. The court ordered the Board in the future to notify Jackson "in connection with each scheduled parole release hearing (a) of the extent, if any, to which any document submitted to Board for its consideration bears the signature of a mental health or clinical services employee of Department and (b) of the procedure for requesting Department to afford him access to such document." *Jackson*, 657 F.Supp. at 831. Although the district court dismissed Jackson's 1984 *ex post facto* claim, ruled that the 1984 due process claim was moot, and held that Jackson was not entitled to be provided with the documents under § 1610.30, it awarded

Jackson the full amount of attorneys' fees he requested, with the exception of $101.25 for paralegal time. In explaining its decision, the court stated:

> This was not a case of unsuccessful claims, ... but rather one of partial success—partial lack of success—on theories that would support a single claim. In this case there was one theory ... that was arguable but unsuccessful [the *ex post facto* argument], whereas the other one [the due process claim] was totally successful in the face of an empty argument that had been made by the defendants. It's really, in the context of this case, I have to say frivolous of defendants to have argued as though the plaintiff were unsuccessful on his claim regarding the 1984 hearing.... [T]he claim was a valid one.... [D]efendants proceeded to moot that claim by having changed their own rule. It wasn't a matter in which the plaintiff lost his claim somehow.

*Jackson v. Illinois Prisoner Review Bd.*, No. 85–C–4545 (N.D.Ill. July 20, 1987) (transcript of proceedings). The Board did not dispute below, and does not raise now, the reasonableness of the number of hours spent or the rate charged. It contends, however, that the district court should only have awarded fees for hours spent on the ultimately successful argument regarding the § 1610.30 requirement.

We find that the unsuccessful *ex post facto* claim was unrelated to the due process claim on which Jackson partially prevailed, and that the hours expended on that claim are therefore not compensable under § 1988. We also find that the district court abused its discretion in failing to reduce the fee to reflect the fact that the plaintiff was only partially successful on his 1986 due process claim. We agree with the district court in all other respects, and therefore affirm the award of sanctions as modified herein.

## II.

### A.

■ The standards for determining a proper fee award to a "prevailing party"

under § 1988 were set forth by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). A district court should first multiply the hours reasonably expended by a reasonable hourly rate to arrive at the "lodestar"—"an initial estimate of the value of a lawyer's services." *Id.* at 433, 103 S.Ct. at 1939. The Board does not dispute this aspect of the district court's fee calculation. A court must then adjust the lodestar to reflect the results obtained. "A partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of *Hensley.*" *Ustrak v. Fairman,* 851 F.2d 983, 988 (7th Cir.1988). Time spent on claims for relief that are unsuccessful and unrelated to the ultimate result achieved are not compensable. A claim is unrelated if it is "distinct in all respects," *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943, and "based on different facts and legal theories." *Spanish Action Comm. of Chicago v. City of Chicago,* 811 F.2d 1129, 1133 (7th Cir. 1987). Claims that "involve a common core of facts or [are] . . . based on related legal theories . . . [such that] counsel's time will be devoted generally to the litigation as a whole" are related and compensable even if not ultimately successful. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. *See Lenard v. Argento,* 808 F.2d 1242, 1245–46 (7th Cir.1987).

■ Having eliminated all unsuccessful, unrelated claims, the district court should tailor the compensable hours for related claims to reflect "the significance of the overall relief obtained." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. There is no specific formula to be used, but the district court must provide a clear explanation reflecting its consideration of the relationship between the relief sought and the results obtained. We generally defer to the district court's fee determination, and will not find an abuse of discretion unless no reasonable person could take the view of the district judge. *Munson v. Friske,* 754 F.2d

683, 696 (7th Cir.1985). *See Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Ustrak,* 851 F.2d at 987.

## B.

### 1.

■ Jackson's *ex post facto* claim was unrelated to his eventually successful due process claim. Jackson asserted that the Board should not have heard his claim en banc because this provision did not exist when he was sentenced. He was disadvantaged, Jackson claimed, because en banc consideration made it more difficult for him to obtain parole. He therefore sought a declaration that the Board must consider his parole application as a three-person panel.

His due process claim on the other hand, asserted that he was deprived of the opportunity to ensure that the Board did not consider erroneous information. It was based on an evidentiary concern, and sought access to evidence. This is not a case where the same claim was stated in two different ways, one of which fell by the wayside. *See Lenard,* 808 F.2d at 1245–46. These claims are distinctly different, based on different facts (composition of Board vs. withholding of evidence) and legal theories (due process vs. *ex post facto*). *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. They seek different relief for different courses of conduct by the same defendant. *See Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279, 1281 (7th Cir.1983). These claims are therefore unrelated, and the district court abused its discretion in refusing to treat the *ex post facto* claim as if it had been raised in a separate lawsuit. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940.

### 2.

■ The 1984 due process claim, although mooted by the Board's rule change, is related to the successful 1986 due process claim; hours expended on this claim are therefore properly compensable.[6] Both

6. Because we hold that these hours are compen- sable as "related" within the meaning of *Hens-*

the 1984 and 1986 claims were due process challenges to the procedures of the Board. They both grew out of the Board's refusal to inform Jackson of the evidence used in his parole determination, and sought information about that evidence. It is true that sequential claims that are not causally related and do not depend on the same facts are not "related" for purposes of *Hensley*. "A plaintiff should not be rewarded for a failed attempt to base liability on conduct that did not result in an actionable wrong to him, even if the conduct closely precedes or follows close on the heels of, conduct that was wrongful." *Lenard*, 808 F.2d at 1246–47.

Here, however, the court held that the Board's failure to provide the documents at the 1984 hearing *was* a violation of due process, and that the 1984 claim was therefore "totally successful." We agree with the district court that if Jackson could not recover fees then "any public defendant could always defeat a 1988 fee award in a declaratory judgment case by acknowledging" the violation and changing its rule to moot the case. Jackson's 1984 and 1986 due process claims were part of the same ultimately successful effort to force the Board to abide by its disclosure rules at Jackson's parole hearings. Reasonable hours expended on these claims are therefore compensable.

### 3.

■ "Where the plaintiff fails to obtain all that he reasonably could have asked for and achieves only partial or limited success, the lodestar amount ... is likely to be excessive." *Spanish Action*, 811 F.2d at 1133. In addition to arguing that the Board was required to notify him at his 1986 hearing of all documents in his file that the Board considered, Jackson argued that the Board was required even under

*ley*, we need not address whether Jackson's suit was a catalyst for the rule change and whether he may therefore be considered a "prevailing party" on his 1984 due process claim. *See Hewitt v. Helms*, — U.S. —, 107 S.Ct. 2672, 2677, 96 L.Ed.2d 654 (1987); *Savidge v. Fincannon*, 836 F.2d 898, 904–06 (5th Cir.1988); *Lovell v. City of Kankakee*, 783 F.2d 95, 96–97 (7th Cir. 1986).

the new rule to provide him with copies of these documents. Jackson prevailed only on the first and less sweeping of these arguments, yet the district court did not reduce the lodestar in light of this limited success. We hold that this was an abuse of discretion. Because Jackson obtained only part of the relief he sought on the 1986 due process issue, his counsel's compensable hours should have been reduced by the time spent developing the unsuccessful argument that the Board was required to actually provide Jackson with the psychological reports.

### III.

■ We compute the appropriate fee ourselves in order to avoid a further expenditure of time and money, and further appeals, on this collateral matter. *Ustrak*, 851 F.2d at 989. The district court awarded Jackson $15,281.82. The record reveals that plaintiff's counsel spent approximately forty hours researching and drafting the arguments underlying the first and second amended complaints and the response to defendants' motion to dismiss.[7] Roughly half of this time is attributable to the *ex post facto* claim, so we reduce Jackson's award by $1500 (20 hrs. multiplied by an average rate of $75 per hour). Plaintiff's counsel also spent about thirty hours on the third amended complaint and summary judgment motion. We will consider half of this time to have been spent on the unsuccessful portion of the 1986 due process claim, and therefore reduce Jackson's award by another $1125 (15 hrs. multiplied by $75 per hour). We accordingly reduce the fee award by $2,625 and round to the nearest hundred dollars "to avoid creating a delusive impression of exactness," *id.* at 989, arriving at an award for fees and costs of $12,700.00.

**7.** Most of the hours spent on this case were part of the "irreducible fixed cost" of the litigation, *Ustrak*, 851 F.2d at 989, including research on procedural matters, case management, client consultation, discovery, and obtaining a protective order.

Jackson is now entitled to additional fees, however. In spite of his lack of complete success on this appeal, he is the prevailing party, and as such is entitled to fees incurred in defending the district court's fee award. He "had no choice but to incur them or forfeit his victory in the district court." *Id.* at 990. We direct Jackson to submit to the clerk of this court within 15 days a statement of fees reasonably incurred in defending this appeal.

We turn finally to a question of prudence. The Board was of course legally entitled to challenge what it viewed as an excessive fee award; its arguments were not frivolous, and indeed have met with some success. But where, as here, the modification sought is comparatively small (the Board suggested at oral argument a reduction of only $3,000) we hope that defendants will give greater consideration to the heavy burden that § 1988 appeals place on the federal courts, *id.* at 986–987, before bringing appeals whose costs are likely to exceed their benefits.