**UNITED STATES of America ex rel. Clarence WALKER, Petitioner,**

v.

**Michael O'LEARY, Warden, Respondent.**

**No. 88 C 7367.**

United States District Court, N.D. Illinois, E.D.

Nov. 21, 1990.

See also, 2 Ill.App.3d 1026, 279 N.E.2d 23.

Clarence Walker, Joliet, Ill., pro se.

Terence Madsen, William P. Pistorius, Asst. Attys. Gen., Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

On December 18, 1989, this court issued an opinion granting in part the summary judgment motion of respondent Michael O'Leary ("O'Leary"), the warden at the Stateville Correctional Center, and thereby rejecting most of the arguments advanced by petitioner Clarence Walker ("Walker") in support of his petition for a writ of habeas corpus. *U.S. ex rel. Walker v. O'Leary*, 727 F.Supp. 444 (N.D.Ill.1989). We left open, however, several issues that had not been adequately developed by the parties: first, whether the state's failure to apply to Walker a more beneficial sentencing provision violated his right to equal protection guaranteed by the fourteenth amendment of the U.S. Constitution; and second, whether Walker had been denied a parole hearing when he first became eligible for parole. Both parties have filed supplemental memoranda with this court, and although the parties' failure to address all aspects of the equal protection issue still prevents us from deciding it, O'Leary's submission compels us to reopen the due process issue, and our finding of constitutional error on due process grounds allows us to resolve this action without further development of the equal protection issue.

### A. Sentence Recalculation

While Walker's petition for a writ of certiorari was pending before the United States Supreme Court, the Illinois Unified Code of Corrections ("the Code") took effect. Although Walker was initially sentenced prior to the Code's effective date, his pending certiorari petition rendered the Code's sentencing provisions applicable to him to the extent they were "less than under the prior law upon which the prosecution was commenced." Ill.Rev.Stat. ch. 38, para. 1008–2–4 (1973). To determine whether Walker's sentence ought to have been recalculated, then, we must compare the Code's provisions to the sentencing scheme under which Walker was actually sentenced and decide which affords more protection for criminal defendants. Citing three Illinois Supreme Court cases, O'Leary urges that the Code's sentencing structure is harsher than the earlier sentencing scheme. The cases invoked by O'Leary, however, do not address the differences in the consecutive sentencing provisions of the two schemes. *See People v. Jones*, 60 Ill.2d 300, 310, 325 N.E.2d 601, 606 (1975); *People v. Lilly*, 56 Ill.2d 493, 497, 309 N.E.2d 1, 3 (1974); *People v. Killebrew*, 55 Ill.2d 337, 343, 303 N.E.2d 377, 381 (1973). While it is true that the three substantive offenses of which Walker was found guilty, when considered individually, are penalized similarly or more lightly under the pre–1973 scheme than under the Code,[1] the aggregation provisions of the

---

1. Rape, armed robbery, and attempted murder are all penalized under the Code as class 1 felonies, each of which carries a mandatory minimum of four years, no maximum minimum term (in setting the minimum term, "the court, having regard to the nature and circum-

Code provide more lenient treatment for defendants like Walker sentenced to consecutive terms.[2]

In a footnote in the December 18 opinion, we stated that it was not clear whether Walker's sentence would be less under the Code's sentencing provisions. 727 F.Supp. at 450 n. 8. That observation, we now believe, is incorrect. The Code limits the aggregate maximum of a consecutive sentence to "twice the maximum term authorized under Section 5–8–1 for the most serious felony involved" and limits the aggregate minimum to "twice the lowest minimum term authorized under Section 5–8–1 for the most serious felony involved." Ill. Ann.Stat. ch. 38, para. 1005–8–4(c) (Smith Hurd Supp.1973). That language, as relates to the ceiling on minimum terms, was changed by a 1973 amendment, effective July 1, 1974, to read: "[t]he aggregate minimum period of consecutive sentences shall not exceed the *highest* minimum term authorized under Section 5–8–1 for the 2 most serious felonies involved." Ill.Rev. Stat. ch. 38, para. 1005–8–4(c) (1973) (emphasis added).

Under the amended language of § 5–8–4(c), application of the Code would not necessarily reduce Walker's sentence,

for Section 5–8–1 did not set absolute ceilings on either the maximum or minimum permissible terms for class 1 felonies (which included rape, robbery, and attempted murder, the three crimes of which Walker was convicted). *See supra* note 1. Under the original Code language, however, Walker's minimum aggregate sentence would have to be modified, for § 5–8–1 does establish an absolute minimum of 4 years for class 1 felonies. The original language, then, calls for a minimum consecutive term of 8 years: twice the lowest minimum authorized for the most serious felony involved (4 years). It is clear that the original incarnation of § 5–8–4(c) applies to Walker; his certiorari petition was denied on February 20, 1973, over a year before the amendment to § 5–8–4(c) took effect, and even if no Supreme Court action had been taken before July 1, 1974, Walker would be "entitled to the benefit of the more favorable intervening statute." *People v. Williams*, 60 Ill.2d 1, 17, 322 N.E.2d 819, 828 (1975); *People v. Gill*, 29 Ill. App.3d 356, 358, 330 N.E.2d 552, 554 (5th Dist.1975).

Recalculation of Walker's sentence to conform with the prescripts of the Code would reduce at least the minimum term of Walker's sentence;[3] Walker's challenge, if

---

stances of the offense and the history and character of the defendant," may set a term higher than the minimum of four years), and no maximum term. *See* Ill.Rev.Stat. ch. 38, sec. 1005–8–1(b)(2), (c)(2) (1973). The prescribed term for rape under the earlier scheme sets the same sentencing parameters as the Code: a defendant found guilty of rape was to be sentenced to "any indeterminate term with a minimum of not less than 4 years." Ill.Rev.Stat. ch. 38, sec. 11–1(c) (1967). Armed robbery carried a more lenient penalty under the earlier scheme: any indeterminate term with a minimum of not less than 2 years. *Id.* at § 18–2(b). A defendant convicted of attempted murder faced a term not to exceed 20 years. *Id.* at § 8–4(c)(1).

**2.** Under the old system, the minimum and maximum terms of multiple indeterminate sentences would be added to determine the aggregate term for consecutive sentence purposes. Thus Walker, who was sentenced to 19 to 20 years for attempted murder, 100 to 150 years for rape, and 100 to 150 years for armed robbery, faced an aggregate sentence of 219 to 320 years imprisonment. With the enactment of the Code, the rules for aggregation of consecutive sen-

tences were modified so that "[t]he aggregate maximum of consecutive sentence shall not exceed twice the maximum term authorized ... for the most serious felony involved" and "[t]he aggregate minimum period ... shall not exceed twice the lowest minimum term ... for the most serious felony involved." Ill.Ann.Stat. ch. 38, para. 1005–8–4(c) (Smith Hurd Supp.1973). This extremely low ceiling on aggregate minimum sentences renders the Code provisions more lenient for most defendants to whom § 1005–8–4(c) would apply.

**3.** It is likely, moreover, that the maximum would change as well, for given the relatively low aggregate minimum compelled by § 5–8–4(c), the resentencing court may be persuaded to order Walker's original sentence to run concurrently rather than resentence Walker to a new consecutive sentence with a minimum aggregate term of eight years. *See Gill*, 29 Ill. App.3d at 357, 330 N.E.2d at 553 (a court " 'may prefer to give a concurrent sentence in those situations where a higher minimum than the *lowest* authorized under section 1005[5]–8–1 may be set by the court in a single case' ") (quoting Ill.Ann.Stat. ch. 38, para. 1005–8–4(c),

successful, could therefore shorten the length of his sentence, and habeas relief would accordingly be appropriate. *Cf. U.S. ex rel. Henderson v. Morris,* 670 F.2d 699 (7th Cir.1982) (habeas petition entertained where prisoner claimed minimum term should be reduced from 20 years to 8 years but did not contest maximum term). Although Walker has already served his minimum term for parole eligibility purposes, we do not believe that the minimum term of record is thereby rendered meaningless; it may be significant in future parole determinations that Walker's minimum sentence is eight rather than 219 years.

### 1. Equal Protection

In our earlier opinion, we declined to decide the question of whether the state's failure to resentence Walker in accordance with § 5–8–4(c) was a violation of the equal protection clause because the parties' memoranda contained insufficient discussion of whether this omission reflected discriminatory intent or whether it was merely an unintentional oversight; an equal protection claim is only cognizable in the former context. O'Leary now asserts that Walker's sentence was never recalculated because no court ever ordered such a recalculation. This explanation, O'Leary continues, clears the state from any charges of discriminatory intent. It appears to this court, however, that this policy of withholding the benefits of the more favorable sentencing provision from those prisoners for whom court orders are lacking rises to the level of intentional discrimination. The policy forces those prisoners whose appeals will be resolved without opinion—prisoners unsuccessfully seeking leave to appeal before the Illinois Supreme Court or petitioning the U.S. Supreme Court for a writ of certiorari—to pursue the extraordinary relief of mandamus in order to receive the benefits of § 5–8–5(c) resentencing. This classification will not be deemed unconstitutional, however, if it is justified by a

legitimate governmental purpose to which it is rationally related. In asserting the absence of purposeful discrimination, however, O'Leary fails to proffer any rationale in support of this classification, and accordingly we are unable to determine at this juncture whether it supplies the constitutional dimension necessary to sustain Walker's habeas petition.

### 2. Due Process

This court's rejection of Walker's due process claim in the December 18 opinion rested on several assumptions. First, we assumed that any intentional decision to withhold the benefits of the Code's aggregation provision to Walker was attributable to an administrative policy not to apply that statute to prisoners with certiorari petitions pending, and accordingly the due process clause would not be implicated.[4] O'Leary's supplementary filing, however, indicates that Walker's deprivation was indeed intentional but was due to a different administrative policy: one that permits recalculation of sentences in accordance with the Unified Code of Corrections only when such recalculation is ordered by a court. For those defendants whose appeals were pending at the Illinois appellate level, this policy would likely not be prejudicial, for the court, along with deciding the appeal, could issue an appropriate order. But for defendants like Walker, who trigger the Code's sentencing provisions by virtue of a pending certiorari petition, the policy requires the prisoner successfully to prosecute a mandamus action. The question remaining, then, is whether this policy violates due process.

The Unified Code of Corrections, effective January 1, 1973, provides that "the sentences under this Act [the Code] apply" to defendants whose cases had not reached a final adjudication by January 1, 1973. § 8–2–4. To be sure, this statute does not require instantaneous application of the new sentencing provisions so that due pro-

Council Commentary (Smith Hurd Supp.1973)) (emphasis in original); *U.S. ex rel. Henderson v. Morris,* 670 F.2d 699, 701 (7th Cir.1982).

**4.** That conclusion is based on yet another assumption—that O'Leary could persuade us that an adjudication is final for the purpose of

§ 8–2–4 before a petition for certiorari is decided by the United States Supreme Court or the time limit for filing such a petition has expired. In the December 18 opinion, we interpreted "final adjudication" to comprehend the Supreme Court certiorari process, but this issue was never briefed by the parties.

cess is denied to all defendants who were not resentenced by January 2, 1973. But neither can the state impose unduly burdensome prerequisites, and we find the policy of requiring a court order—which amounts to, in some instances, a requirement that the defendant obtain a writ of mandamus—to be unnecessarily onerous. The possibility of permanent erroneous deprivation, either through (as here) procedural error in the course of a mandamus proceeding or through a failure to institute such a proceeding altogether, is too great and the burden on the government in providing less onerous procedures for resentencing too slight to allow the state to impose this requirement before a prisoner will be allowed to enjoy the benefits accorded him by statute. Due process requires that the state take a less passive approach to the resentencing mandate of § 8–2–4. Accordingly, we conclude that the state's policy, as applied to Walker, violates his right to due process, and we find it appropriate to grant Walker's petition with respect to the state's failure to resentence him in accordance with the Unified Correction Code of 1973.[5]

### B. *Parole Eligibility*

The December 18 opinion additionally left open the question of whether Walker's parole eligibility determinations were marked by any irregularity. With his latest filing, O'Leary has submitted a xeroxed

copy of the decision to deny Walker's parole on January 4, 1977; this submission documents unambiguously that the initial denial was proper. Walker does not further contest this point, nor does he argue that subsequent eligibility determinations were improper; the issue of the propriety of Walker's parole determinations, moreover, was decided in favor of the Prisoner Review Board in *Walker v. Prisoner Review Bd.*, 694 F.2d 499 (7th Cir.1982).[6]

### CONCLUSION

The intricacies and collateral effects of the now 17–year–old change in sentencing procedures have spawned considerable litigation. It is unlikely that there are many Walkers left in the Illinois prison system, and it may well be that the change will have no impact whatsoever upon petitioner's release date. He is, however, entitled to try. For the foregoing reasons, we grant Walker's petition with respect to the resentencing issue and deny the petition in all other respects. Walker's sentence of 219 to 320 years is vacated. The state shall have 90 days from the issuance of this order to resentence Walker in accordance with the Illinois Unified Code of Corrections in effect during the pendency of Walker's certiorari petition.

---

**5.** We noted in our earlier opinion that Walker was not entitled to elect a fixed release date under Ill.Rev.Stat. ch. 38, para. 1003–3–2.1 (1987) because his minimum sentence of record when the statute first went into effect was 219 years, 199 years more than required to trigger the statute, and even if Walker had been resentenced, it was unfathomable that his sentence would have been sufficiently reduced to bring him within the purview of the statute. Under the correct interpretation of § 1005–8–4(c), that contingency is now fathomable. Although we have determined that Walker's sentence must be recalculated and it is possible that his minimum term will be eight years, we decline to decide whether § 1003–3–2.1 applies to a prisoner whose minimum sentence is reduced to a term of under 20 years, however, because of the possibility, adverted to *supra* note 3, that Walker's sentence will be modified to run concurrently.

**6.** We rejected in the December 18 opinion Walker's argument that he had not been accorded the

benefits of Ill.Rev.Stat. ch. 38, para. 1003–3–3(c). Because of Walker's assertions elsewhere that he was entitled to a fixed release date, we understood his § 3–3–3(c) argument to refer to the current statute, which sets forth procedures for the release of prisoners with fixed release dates. The applicability of this section to Walker may be affected by his resentencing, *see supra* note 5, but that issue is not before us and may never arise.

Walker alternatively may have been referring to the 1973 version of § 3–3–3(c) in his original filings; that statute established the new parole eligibility guidelines for the Unified Corrections Code. Although the minimum term of an indeterminate sentence is relevant for the purposes of that provision, Walker has been eligible for parole since January 1977, and therefore any modification of his sentence will not affect his parole eligibility under the original § 3–3–3(c).